## S. WINIFRED HARRIS v. SECURITY LIFE INSURANCE COMPANY OF AMERICA, Appellant.

**Division One, February 28, 1913.**

1. **INSURANCE: Incontestable Provision.** A life insurance policy containing a provision that it shall be incontestable after a specified time, cannot be contested by the company on any ground not excepted in that provision.

2. ————: ————: **Fraud: Under Illinois Law.** Even if under the Illinois law pleaded as applicable to the Illinois contract of insurance sued upon it could be held to be contestable on the ground of false warranty and fraud if discovered by reasonable diligence within one year, in spite of a provision therein making it incontestable on any ground except the payment of premiums, an answer that fails to plead any facts of diligent conduct to discover whether the policy was obtained by fraud, does not present a triable issue on the point; and if in addition, the evidence fails to show the company used any reasonable diligence to discover fraud, but does affirmatively show that the company six months after the policy was issued wrote that it knew all the facts necessary and thereafter acknowledged to the beneficiary that the policy was in force, the defense is not sustained.

3. ————: **Payment of Premium.** In a suit on a life insurance policy the production of the policy and proof of due notice of the death of the insured make out a prima-facie case for the beneficiary, and cast upon defendant the burden of showing whether any premium was unpaid at the death of the insured.

Appeal from Jackson Circuit Court.—*Hon. Thomas J. Seehorn,* Judge.

AFFIRMED.

*Yates & Mastin* for appellant.

(1) This policy is to be interpreted by the laws of Illinois. According to the decisions of the Supreme Court of Illinois, such a clause as that contained in the policy sued on, does not make the contract absolutely incontestable in cases where false and fraudulent answers are given by the insured in his application. It is only where the incontestable stipulation gives to the insurer a period for investigation and ascertainment of the truth of the representations made in the application, sufficient to enable the company, by the exercise of proper diligence to find out whether fraud has been practised or not. Flanigan v. Ins. Co., 231 Ill. 399; Royal Circle v. Achterrath, 204 Ill. 549. It has always been the law, everywhere, and it ought to be the law, that fraud vitiates every contract. There is much respectable authority to the effect that such a clause (but without a time limit), as that contained in the policy sued on in this case, does not preclude the company from showing fraud. Bliss on Life Insurance (2 Ed.), p. 431; Welton v. Hardisty, 8 E. & B. 232; In re Life Assurance Co., 18 Weekly Rep. 396; Welsh v. Life Ins. Co., 108 Ia. 224. "An indisputable policy is not in fact really indisputable for it leaves open the question whether the statement or omissions complained of were fraudulent or not." Bunyon on Life Insurance, p. 85. (2) Plaintiff's instruction 1 is unquestionably erroneous, no matter what view we may take of the other questions presented by this appeal. It is, in fact, a peremptory instruction for plaintiff. By its terms the jury must find for the plaintiff subject only to the following conditions: 1, That they

248 Mo.—20

find plaintiff was, when the policy was issued, the wife of Robert H. Harris; 2, That proofs of death of Robert H. Harris were furnished to the defendant; 3, That defendant thereafter failed or refused to pay plaintiff the amount specified in the policy. The instruction, of course, is bottomed on the theory that the policy is absolutely incontestable and that this incontestability is subject to no contingency whatever. It is so pleaded by plaintiff in her reply, but such is not the condition contained in the contract in evidence; by its terms the policy is incontestable after one year "provided the premiums are duly paid." No evidence was offered with reference to the payment of the second premium due on Dec. 20, 1906, nor does the instruction submit this policy qualification to the jury, although the policy, by its terms, promises to pay unto the plaintiff the indemnity only in consideration of the payment of "two hundred and twenty-five dollars and no cents in advance and of a like sum on the 20th day of December in each year for five years from the date hereof." Plaintiff's petition pleads compliance with all of the conditions of the contract which includes the above, yet no proof is offered in support of the issue, nor is it submitted to the jury. Clearly respondent cannot take advantage of this clause by which the company surrendered valuable rights without any proof of compliance with the terms of the stipulation. The payment of premium, when due, was a condition precedent and upon the fulfillment thereof the incontestability clause of the policy depended. "The distinction between warranties and conditions precedent is well pointed out in Redman v. Ins. Co., 49 Wis. 431, where the court says that a condition precedent calls for the performance of some act or the happening of some event after the terms of the contract have been agreed on and before the contract takes effect." 2 Cooley's Briefs on Law of Insurance, p. 1151 (O). "In view of the essential characteris-

Harris v. Insurance Co.

tics of conditions precedent, it is elementary that a breach of such a condition avoids the policy absolutely." 2 Cooley's Briefs on Law of Insurance, p. 1169 (I). According to the great weight of latter day authority in this country, a policy of life insurance which provides that it shall be incontestable after some mentioned term, cannot be attacked, even though the insured shall have practiced the most flagrant and glaring fraud upon, the insurer. Some of the modern courts seem to justify these decisions, which we think are at varance with good morals, sound public policy, and sound reason, by denominating such a condition a short statute of limitation, applicable to the policy contract. All of the modern decisions that we have read upon the subject are more specious than sound. It does not lie within the compass of any judge, however learned, to justify the literal and technical enforcement of contract language which violates the time honored and universally approved legal aphorism: "Fraud vitiates all contracts." To literally and technically enforce this modern legal rule, is to place a very high premium upon rascality and criminal conduct. This is well illustrated by the facts in the very case that we have under consideration. We venture to say there is no insurance company in Christendom that would knowingly insure an ex-convict, who had served a term for the commission of a crime involving moral turpitude, relying upon the statements and warranties made by him in his written application for the policy, as the foundation of the contract. If one induces another to enter into a contract through his fraudulent acts, there is no contract and by all of the rules of right, it ought to be impossible that there should be a contract under such circumstances. No living man can justify a decision upholding the incontestability of a contract where the making of that contract has been brought about through the absolute fraud and chicanery of the party whose beneficiary

seeks to profit by it. He may be able to satisfy sophistry, but he will never be able to satisfy his own conscientious perceptions of what is the right of the matter. (3) The court erred in refusing to give defendant's instruction 7. If plaintiff was suffering from any brain or nervous disorder at the time of the application, which was the 17th day of December, 1906, and there is abundant evidence from which this inference may well have been drawn by the jury, then it goes without the saying that he was not in good health at the time the policy was delivered, within the meaning of its conditions in that regard. If Harris was not in good health when the policy was delivered to him, then the contract never attached. When an insurance application provides, as here, that the policy shall not become binding on the company issuing it until the first premium has been actually paid during the good health of the applicant, it has always been held that this condition must be observed before the contract becomes effective. Volker v. Ins. Co., 21 N. Y. Supp. 456; Reese v. Ins. Co., 111 Ga. 482; Anders v. Ins. Co., 62 Neb. 585; Langstaff v. Ins. Co., 69 N. J. L. 54; Life Ins. Co. v. Willis, 37 Ind. App. 48. Where it is shown that the insured was not in good health at the delivery of the policy containing such condition, it never attaches. "It is like insuring a building already on fire." Powers v. Ins. Co., 50 Vt. 637; Thompson v. Ins. Co., 101 N. W. (N. Dak.) 901; Ins. Co. v. Howle, 62 Oh. St. 204. "The question of sound health is for the jury." Dorey v. Ins. Co., 172 Mass. 234.

*J. C. Rosenberger* and *Kersey Coates Reed* for respondent.

(1) Each and every one of appellant's defenses are foreclosed by the incontestable clause of the policy. By an unbroken and unanimous line of authority it has been held everywhere that where, as here, the clause provides that after a specified time the

Harris v. Insurance Co.

policy shall be incontestable and the policy matures by death after that time, the liability of the company is absolute and the policy cannot be contested for fraud or any other cause not excepted by the clause.   25 Cyc. 873; Royal Circle v. Achterrath, 204 Ill. 549; Flannigan v. Ins. Co., 231 Ill. 399; Ins. Co. v. Robinson, 104 Ga. 256; Ins. Co. v. Montgomery, 116 Ga. 799; Vetter v. Ins. Co., 29 N. Y. App. Div. 72; Wright v. Ins. Co., 118 N. Y. 237; Patterson v. Ins. Co., 100 Wis. 118; Austin v. Mutual Reserve Ass'n, 132 Fed. 555; Reagan v. Ins. Co., 189 Mass. 555; Murray v. Ins. Co., 22 R. I. 524; Mohr v. Ins. Co., 32 R. I. 177; Clement v. Ins. Co., 101 Tenn. 22; Ins. Co. v. Fox, 106 Tenn. 347; Ins. Co. v. McClure, 138 Ky. 138; Wood v. Dwarris, 11 Exch. 493, 25 L. J. 129; 25 Cyc. 873.   (2) Plaintiff prima-facie showed that all of the premiums had been duly paid when she produced and offered the policy and it then devolved on defendant to overthrow this showing with proof to the contrary.  This it could not and did not do.  It did not even plead non-payment of premium, which is an affrmative defense, in its answer.  The burden of showing non-payment of premium rested on defendant.   25 Cyc. 925, 927; Mulroy v. Sup. Lodge, 28 Mo. App. 463; Forse v. Sup. Lodge, 41 Mo. App. 117; Laessig v. Ins. Co., 169 Mo. 281; Crenshaw v. Ins. Co., 71 Mo. App. 281; McCullough v. Ins. Co., 113 Mo. 616; Winn v. Ins. Co., 83 Mo. App. 123.  And this is also the law in Illinois: Achterrath v. Loyal Circle, 204 Ill. 549; Ins. Co. v. Cannon, 103 Ill. App. 534, 201 Ill. 260; Ins. Co. v. March, 118 Ill. App. 261.   (3)  The acceptance by defendant of a sixty-day note in payment of the first premium and the issuance by the company's secretary of a binding receipt, the terms of which put the policy in effect "from the date of approval of the application by the company's medical director," was a waiver of prepayment of the premium and did not delay or postpone the running of the period of contestability until pay-

ment of the note.   Dobyns v. Ins. Co., 144 Mo. 95; Grier
v. Ins. Co.. 1?? N C. 542; Ins. Co. v. Schlink, 175 Ill.
284; Kelly v. Ins. Co., 3 Mo. App. 554; Life Ins. Co. v.
Stone, 42 Mo. App. 383; Ins. Co. v. Schlink, 175 Ill. 284.

## STATEMENT BY THE COURT.

This is a suit by the wife on a policy of
insurance upon the life of her deceased husband,
which was executed and delivered by the defend-
ant corporation on December 20, 1906, in considera-
tion of the premiums then paid and to be paid by her
husband, Robert H. Harris, wherein and whereby de-
fendant agreed, upon satisfactory proof of his death,
if that should happen within five years, to pay to
plaintiff the sum of $10,000.   It was stipulated that
her husband died on the 21st of December, 1907.   Due
proofs of death were furnished, and payment of said
sum demanded, which defendant refused to pay.   Judg-
ment was prayed for said sum of $10,000, with interest
from the 1st day of March, 1908.

The answer of defendant admitted that it was an
insurance company and that its general offices were at
Chicago, in the State of Illinois.   It then averred for
a further defense that it issued the policy in suit upon
the application of the insured in the city of Chicago,
State of Illinois, and subject to the laws of that State.
the answer further set up that all the statements of
the applicant made to the company's examiner were
to be construed as warranties and to constitute the
consideration of the policy applied for; that the in-
sured represented that he was not then afflicted with
illness, although he knew to the contrary; that he al-
so falsely stated that the only disease he had ever had
was in the year 1902, resulting from a fall, although
he well knew he had been attended by and consulted
numerous physicians for diseases, ailments and sick-
nesses immediately before applying for said policy;
that he had received medical advice for an attack of
hystero epilepsy and nervous diseases and headaches,

and had been so treated while he was an inmate of the penitentiary of the State of Minnesota; that the insured falsely stated that he had not been rejected as a risk upon his application to other insurance companies; and that defendant would not have issued its policy to him except for the false warranties so made; that the insured did not disclose to defendant the fact that he had been incarcerated in the penitantiary, nor that he was indicted in Kansas; that had defendant known such facts it would have placed no reliance whatever on the warranties of "said Harris contained in the written application signed by him;" that the failure of defendant to make these, discoveries upon. inquiries and by correspondence with "various commercial agencies," was not by reason of negligence on its part but because of the "deceit and fraud" practiced by the insured at the time of his application. The answer then concludes, the policy was an Illinois contract to be adjudged by the laws of that State, which, as announced in Vol. 231 of its official reports, at page 399, entitle defendant to a reasonable time in which to discover any fraud on the part of the insured, provided it acted with diligence.

The reply of plaintiff, after a denial of the new matter contained in the answer, averred that the policy in suit contained a provision that it should be incontestable one year from its date of issue; that the insured died more than one year after said date, wherefore defendant was precluded from all the defenses attempted to be set up in its answer. The reply admitted that all the provisions of the policy are subject to the construction applied to a contract in that form in the State of Illinois; but denied that the doctrine of the courts of that State was correctly stated in defendant's answer; and pleaded the volumes and pages of the reports of that State relating to the force and effect of the clause of incontestability contained in said policy, as a preclusion of the defenses set up

in its answer. The reply also denied that the statements made by the insured in his application were false or untrue; and denied that the insured warranted them to be complete or full or wholly responsive to the questions propounded, and cited the Illinois reports bearing on this part of the reply. Wherefore, she prayed judgment as in her petition.

On the trial plaintiff introduced the policy in suit, containing this clause:

"1. This policy shall be incontestable after one year from its date of issue for the amount due, provided the premiums are duly paid, excepting that military or naval service in time of war without a permit are risks not assumed by the company at any time." And also furnished proof of the death of the insured. She then read in evidence the stipulation signed by the attorneys for the respective parties, to the effect that her husband, the insured, lived until ten or eleven o'clock in the evening of the 21st of December, 1907.

The defendant introduced evidence tending to prove that the insured met his death by jumping in the center of a street car track about twenty feet before an approaching train; and a deposition of the physician in charge of the medical department of the State prison at Stillwater, Minnesota, tending to prove that the insured was received into that institution on the 27th of November, 1901, and was paroled on the 11th of September, 1903, and received frequent treatments for illness while there; a list of prescriptions which were administered; and introduced a doctor from Duluth, Minnesota, who testified that he treated the insured in April, 1901, at his house in that city for hystero epilepsy. He only made five visits to the patient. Defendant introduced a number of witnesses tending to show that they had treated the insured for certain illnesses affecting his nervous system. Defendant also introduced the deposition of a witness who testified that the insured, Robert H. Harris, ap-

plied for a policy in that company about July, 1892, and that his application was declined. Defendant offered in evidence certain letters of inquiry written by it as tending to show that it made efforts to get information with reference to the insured. This correspondence was excluded. The defendant adduced evidence that the first premium was represented by a sixty-day note which was paid on its maturity by the insured. The Illinois decisions were offered in evidence by the plaintiff in rebuttal.

The jury brought in a verdict for the amount of the policy and interest, from which the defendant duly appealed to this court, where it assigned for error that the policy in suit was not incontestable under the facts shown in this record; and that the court erred in giving and refusing instructions.

## OPINION.

### I.

BOND, J. (after stating the facts as above).— The modern rule is that a life insurance policy containing a provision that it shall be in-

**Insurance:**
**Incontestability.**

contestable after a specified time, cannot be contested by the insurer on any ground not excepted in that provision. [Williams v. Ins. Co., 189 Mo. 70; Massachusetts Benefit Life Ass'n v. Robinson, 104 Ga. 256; Ins. Co. v. Montgomery, 116 Ga. 799; Wright v. Ins. Co., 118 N. Y. 237; Patterson v. Ins. Co., 100 Wis. 118; Mutual Reserve Ass'n v. Austin, 6 L. R. A. (N. S.) 1064; Murray v. Ins. Co., 22 R. I. 524; Clement v. Ins. Co., 101 Tenn. 22; Ins. Co. v. McClure, 138 Ky. 138; 25 Cyc. 875.]

In the case first cited the accordant doctrine of this State is expressed. There the suit was by the husband upon a policy issued on the life of his wife. The defenses were that the insured imposed upon the company by substituting another woman for medical examination and by making false warranties as to her health. The policy contained a clause that after two years, with certain exceptions as to occupations, it

should be incontestable "except for non-payment of premiums or under-statement of age." In speaking of the effect of this language, the court (VALLIANT, J.) said, that it would govern assessment as well as other policies, and that if applicable, then the company "must abandon all other defenses" than those excepted in the provision. The reason of the rule is, that no other interpretation can be given to a contract not to contest (with named exceptions) after a fixed time, without destroying the natural and ordinary meaning of the terms employed and reading into them a significance which they will not bear. The motive for such contracts is to put the insured at rest as to all attacks upon the validity of his policy other than the exceptions named, provided he will pay the premiums and abstain from perilous callings, and to engender in his mind a conviction that those he has undertaken to protect will not be left unprotected. To effectuate these purposes the companies now propose contracts to the insured (like the one at bar) whereby they agree for a consideration, after a time fixed by themselves, to abandon any attack upon the obligations of their contract other than for specially reserved grounds. Such agreements are lawful and should be enforced according to their terms. Not to do so is to permit the insured to be misled and induced to take out insurance under the proffer of a contract of "imperishable security" for his beneficiary, which is nevertheless in reality open to the same attacks for false warranties which might be made in any suit brought on policies not containing that provision. This is not a construction but a misconstruction which would convert a contract not to contest into a delusion and a snare, and would permit the insurance companies, after having acquired policies taken out in faith thereof and because of such faith in many instances at a great pecuniary sacrifice, to make the *very* defenses, after the lapse of the time fixed for excluding

them, which might have been made before. We do not understand the learned counsel for appellant to deny the fact that the rule formulated above is supported by "the great weight of latter day authority in this country" (Appellant's brief, p. 29), but we gather from their brief that they are content to assail the proposition by characterizing the reasoning of the courts as being "more specious than sound," "at variance with good morals," "sophistry," and inconsistent with the "Decalogue." This method of assailing the logic of the decisions of the courts, if it be lacking in demonstrative force or constructive reasoning, may have the merit, at least, of reflecting the temper and taste of the writers. Possibly the great judgments of the great judges cited above will not be wholly dissolved by an irruption so slight and so entirely free from every element of dialectical reasoning or any form of logical disproof. We are inclined to indulge this hope when we bear in mind that the demolition of this great consensus of judicial conclusion is attempted, only, by the use of the particular aerial force which is said to have overthrown the walls of Jericho.

The learned counsel for appellant having, as they express it, "gotten the matter out of their system at the outset," "return to the mutton" and assign for error that under the pleadings and proof in this case the policy was not incontestable on the

**Warranties: Fraud.** grounds of false warranty and fraud despite its provisions to the contrary. Their point being that the period of one year fixed by the parties to the contract was not sufficient to enable one party thereto (the insurer) to ascertain by diligence whether his contract was fraudulently obtained. In support of which they cite two Illinois cases which they claim govern the interpretation of the policy in suit. An examination of the answer of appellant discloses that it does not allege any *facts* of diligent conduct on its part to discover whether its policy was obtained

by fraud. The answer avers inquiry by correspondence and through appellant's agents to ascertain the truth of the applicant's warranties, and it is also replete with general statements of "fraud" and "skillful concealment," but it nowhere alleges the particular acts and doings of appellant within the year to discover and unearth the facts justifying its general charges of misconduct; and it nowhere shows, by the things done and the time consumed in doing them, that this period was not sufficient time within which, by reasonable diligence, they might have acquired the information desired. The answer, therefore, did not present a triable issue on that point. And this. is decided in the two decisions of the Illinois courts relied on by appellant. [Flanigan v. Federal Life Ins. Co., 231 Ill. 399; Royal Circle v. Achterrath, 204 Ill. 549.] But beyond all this and irrespective of the pleadings, the evidence contained in the record wholly fails to show that appellant used reasonable diligence in searching out the history of the insured and the truth of the matters stated in his application for the policy, and it also failed to show that the time given in the policy to do this (one year) was not sufficient for that purpose. (Even if that limit could be ignored under the Illinois decisions, which we do not decide.) The result is that the defense sought to be interposed was neither well pleaded nor sustained by the evidence.

But the matter does not stop here, for it distinctly appears from the record, that after making inquiries as to the past of the insured, the appellant, on January 17, 1907, through its State manager for Illinois, wrote to its medical examiner in reference to the application of the insured for a second policy a letter which concludes as follows: "I think we have found out all that is necessary about this man, and the only thing to do is to refuse to issue the second $10,000 policy. In regard to the original $10,000 policy is-

sued, the note he gave in payment of the premium thereof is due February 16th, when we can see whether the same is paid; and if not, take action accordingly." This letter was written only about three weeks after the issuance of the policy in suit, and apparently after appellant had satisfied itself as to the antecedents of the insured, and shows that while it did not care to take additional insurance on his life, it was entirely willing to continue the policy in suit.

Again, on July 12, 1907, appellant through its secretary, answered a letter of inquiry written by the brother of the beneficiary in the policy, using the following language: "I have been prevented from replying to you, giving to you for Mrs. Harris, beneficiary, the information desired respecting policy No. 10677, on the life of her husband, Robert H. Harris, who on Dec. 20, 1906, secured a policy for $10,000 in this company in favor of the said beneficiary. There appears to be no good reason why the information should not be furnished to your sister, as the policy is in her favor, and in reply I have to say, that the first premium on the policy was settled by a promissory note for $225, which note has been paid, and the policy is now in force up to Dec. 20, 1907, when another premium of $225 will become due.
"Imperishable Security.

Henry C. Brown, Secretary."

This letter contains a distinct affirmance of the existence and enforceability of the policy in suit made more than six months after it was issued and in full light of all of the investigation made on part of the appellant up to that time, and which seems not to have been continued thereafter. The letter contains no hint of an intention to annul or cancel the policy, and undoubtedly was a waiver of any grounds for so doing of which appellant had been previously apprised.

Our conclusion is, that under the pleadings and

proof in this case the error assigned by appellant cannot be sustained under the applicatory law contained in the Illinois decisions, supra.

## II.

Appellant insists that it was incumbent on the insured to make proof of the full payment of all premiums on the policy at the time of the death of the insured. Whether the premiums had been received or not was a matter peculiarly within the knowledge of appellant. It, however, neither pleaded nor proved non-payment; although if that were the fact, the policy would have been relieved of the preclusion of the clause making it incontestable after one year, and it would have been open to any legitimate defenses, such as false warranties or fraudulent representations. The record contains no positive proof of the payment of the second premium. The payment of the first premium is admitted.

Under these circumstances, the production of the policy, together with proof and due notice of the death of the insured, made a prima-facie case for respondent, and cast upon the defendant the burden of showing whether any premium was unpaid at the death of the insured. [25 Cyc. 925, 927; Provident Sav. Life Assur. Society v. Cannon, 201 Ill. 250; Ins. Co. v. March, 118 Ill. App. 261; Crenshaw v. Ins. Co., 71 Mo. App. 1. c. 52.]

The trial court in this case submitted by instruction No. 1 the questions upon which a prima-facie right to recover depended—the issuance of the policy, the relationship of the plaintiff to the beneficiary, the death of the insured, and due notice thereof to appellant. That instruction was proper under the pleadings and evidence in this case, and justified the trial court in refusing instructions of a contrary tenor requested by appellant. The judgment in favor of plaintiff is therefore affirmed.

*Woodson, P. J., Lamm* and *Graves, JJ.,* concur.