MOLLIE M. LAFFERTY v. KANSAS CITY CASU-
ALTY COMPANY, Appellant.

Division One, April 9, 1921.

1. **ACCIDENT INSURANCE: Prima-Facie Case.** In an action on an accident policy the plaintiff makes out a prima-facie case by introducing the policy and proving the death of the insured, from external bodily injuries accidentally received, within the time covered by the policy.

2. ————: ————: **Delivery: Presumption: Directed Verdict: New Trial.** The possession of the policy by the insured raises the presumption that it had been delivered and paid for, or that credit had been given for the premium; and plaintiff having made out a prima-facie case by introducing the policy in evidence and proving the insured's death, by external bodily injuries accidentally received, within the time covered by the policy, it is error to direct a verdict for defendant, however strong and convincing may be the evidence introduced by defendant to show that the policy had not been delivered or the premium paid before the death of the insured. The fact of non-delivery, where the policy was in the possession of the insured, is an affirmative defense, and the weight of the evidence to sustain it is a matter for the jury, which the court cannot lawfully usurp.

   *Held*, by GRAVES, J., concurring, that the presumption of a delivery arises upon the showing that the policy was in possession of the deceased, and such is a rebuttable presumption, but the

credibility of facts sufficient in the mind of the court to destroy the presumption is for the jury to determine, and hence where the court, in the presence of such facts, has directed a verdict for the defendant, a motion for a new trial should be sustained. But the trial court has authority to grant a new trial on the ground that the verdict is against the weight of the evidence, and where there is no directed verdict and the jury, in the face of facts which destroy plaintiff's prima-facie case, return a verdict for plaintiff, the court should set it aside.

3. ———: **Testimony of Agent.** The testimony of the agent of the company at the time the policy was issued, tending to show that it was not really delivered to the insured and was not paid for, is competent, although the insured is dead. [Following Wagner v. Binder, 187 S. W. 1128, and Allen v. Jessup, 192 S. W. 720.]

4. ———: **Payment of Premium by Volunteer: Hearsay.** Testimony of persons in whose employ the insured was or with whom he was connected in business, showing that at the time they paid the premium on the policy they knew or had been informed that the insured had been killed in a distant town, is not hearsay, but is binding on the plaintiff for the reason that their act in paying the premium, though made of their own motion and voluntarily, was her act, where she seeks to avail herself of the benefit of said act.

Appeal from Louisiana Court of Common Pleas.—*Hon. Edgar B. Woolfolk,* Judge.

AFFIRMED.

*McCune, Caldwell & Downing* and *H. M. Noble* for appellant.

(1) No contract of insurance was ever consummated. The application clearly provided when and under what conditions the insurance was to take effect. The policy was never accepted by the applicant, nor were the conditions precedent performed. (a) Lafferty never accepted the policy sued upon. As he never became liable for any premium, there is correlatively no liability on the part of the defendant. Kilcullen v. Met. Life Ins. Co., 108 Mo. App. 61; Piedmont Life Ins. Co. v. Ewing, 92 U. S. 377, 23 L. Ed. 610. (b) The premium was not paid while Lafferty was in good health and free

from injury and therefore by his own agreement the insurance applied for never became in force. 1 Joyce on The Law of Insurance, p. 315; Kilcullen v. Met Life. Ins. Co., 108 Mo. App. 61; Piedmont Life Ins. Co. v. Ewing, 92 U. S. 377, 23 L. Ed. 610; Stephens v. Met. Life Ins. Co., 190 Mo. App. 673; Cravens v. New York Life. Ins. Co., 148 Mo. 583; Whiting v. Life Ins. Co., 129 Mass. 240; Gordon v. Prudential Ins. Co., 231 Pa. 404. (c) The policy was never delivered so no contract of insurance was ever made. Wood v. Mutual Life Ins. Co., 32 N. Y. 619; 1 Joyce on Law of Insurance, p. 265; Equitable Life Assur. Co. v. Mueller, 99 Ill. App. 460; Misselhorn v. Mutual Reserve Life Assn., 30 Mo. App. 589; 1 Cooley's Brief on Law of Insurance, p. 448; Kilcullen v. Life Ins. Co., 108 Mo. App. 69; Poplin v. Brown, 205 S. W. 411; Gordon v. Life Ins. Co., 231 Pa. 404; Markey v. Ins. Co., 103 Mass. 78; Rey v. Life Assur. Society, 44 N. Y. S. 745. (2) The deposition of Joseph Burton was admissible in evidence. 4 Jones on Evid. sec. 775, pp. 645-6; Clark v. Thias, 173 Mo. 628; Wagner v. Binder, 187 S. W. 1128.

*Pearson & Pearson* for respondent.

(1) One of the grounds on which the court sustained the motion for new trial was, that the verdict was against the weight of the evidence; and, this is not a ground upon which the appellate court may interfere. Miners & Merchants Bk. v. Rogers, 123 Mo. App. 569; Fink v. McCue, 123 Mo. App. 316; Karnis v. Winn, 126 Mo. App. 712; Jones v. Oliver, 129 Mo. App. 86; Crow v. Crow, 124 Mo. App. 125; Clarkson v. Garvey, 179 Mo. App. 18; Cornell v. Ins. Co., 179 Mo. App. 426; Jiner v. Jiner, 182 Mo. App. 158. That the "verdict is against the evidence," or, "should have been against the plaintiff instead of defendant," are grounds for a new trial, substantially the same as saying that the verdict is against the weight of the evidence. State ex rel. v. Todd, 92 Mo. App. 1; Bird v. Vanderburg, 168 Mo. App. 118; Raifiscen v. Young, 183 Mo. App. 511; Watts v. Pier-

son, 170 Mo. App. 532. (2) There was abundant evidence in this case to carry it to the jury. The possession of the insurance policy by the insured, and the sending out by the home office, of the "Official Receipt Card" and "Identification Card" are sufficient evidence of a delivery of the policy to carry the question of delivery to the jury. Appellant urges that, the advanced premium of $1.60 was not paid, previous to the delivery of the policy. Respondent's reply, that under the provision and requirements of the application, to-wit: "the advanced premium of $1.60 must be paid in advance without notice," the Home Office would not, and did not approve an application for insurance, until it had received the $1.60 or waived the payment of same. At any rate, after approving the application, issuing the policy, and delivering same to the insured, it is prima-facie evidence of the payment, of the advanced premium. Without Burton's testimony, this evidence would be ample to justify and sustain a judgment. Whether or not Burton was telling the truth, in his testimony, was a question for the jury. And, the trial court recognizing the fact that it committed error in taking this case from the jury, did not abuse its discretion in granting respondent a new trial.

WOODSON, J.—This suit originated in the Court of Common Pleas of Pike County, brought by the plaintiff to recover the sum of $400 on an insurance policy issued by the defendant to Hugh L. Lafferty for the use of Mollie M. Lafferty, his mother. At the trial, the court, at the conclusion of the evidence, directed a verdict for the defendant, and upon a motion for a new trial being filed, the court sustained the same, and in due time and proper form the defendant appealed the cause to the St. Louis Court of Appeals, which in due course affirmed the judgment of the lower court, but upon motion for a rehearing that court transferred the cause to this court, because it deemed its ruling was in conflict with the Springfield Court of Appeals in the case of Gilmore v. Modern Brotherhood of America, 186 Mo. App. 445.

While the cause was pending in the Court of Appeals, REYNOLDS, P. J., in a very careful and ably prepared opinion, in which all the judges concurred, said:

"One Mollie M. Lafferty, mother of Hugh L. Lafferty, deceased, brought her action against the defendant company on a policy of insurance, of date January 9, 1914, under and by which defendant, among other things, promised to pay plaintiff the sum of $400, on the death of the insured, resulting solely and directly from bodily injury sustained during the life of the policy. It is alleged that while the policy was in force Hugh L. Lafferty was killed by being run into and struck by a train of cars on the Chicago, Burlington & Quincy Railroad Company's track. Averring that Hugh L. Lafferty had performed all the terms and conditions of the contract of insurance on his part, but that defendant denies all liability on the contract and has failed and refused to pay plaintiff the indemnity due her, and that prompt and timely notice of the death of Hugh L. Lafferty had been given the defendant and blanks for proof of death requested of it but refused, plaintiff prays for judgment for $400 with interest at six per cent from April 19, 1914, and costs.

"The answer after a general denial of all the averments of the petition and a special denial that Hugh L. Lafferty had performed all the terms and conditions of the contract, or that the insurance contract was ever executed or went into effect, it is set up that in the application for the policy which accompanied it there was a statement to the effect that Lafferty understood and agreed that the statements made were material representations to induce the issuance of the policy; that he warranted them to be full and complete and true; 'that the insurance hereby applied for will not be in force until the payment in advance of the premium and the delivery of the policy to me while I am in good health and free from all injury;' and that the advance premium of $1.60 must be paid in advance without notice. It is further averred in the answer that no premium or payment for the insurance was made while Lafferty was in good health and free from injury, no

premium or payment was made thereon prior to the death of Lafferty, and that there was no consideration for the contract. It is further pleaded that if the contract of insurance sued upon was ever executed and put into effect, it was rescinded prior to the death of Lafferty by mutual oral agreement of the parties thereto. This answer was verified by an agent of the defendant company.

"It does not appear that a reply was filed, but the cause went to trial before the court and a jury, resulting in a directed verdict in favor of defendant. Plaintiff filed a motion for a new trial, which was sustained, and from this action defendant appealed. Pending the appeal, plaintiff died, and her death being suggested, her administrator duly entered his appearance.

"At the trial plaintiff introduced the policy and application in evidence and it was admitted that Hugh L. Lafferty came to his death from injuries received by being run into by a train on a railroad at Louisiana, Missouri, he being there on a visit, his home being at Moberly. This occurred about four o'clock on the morning of January 18, 1914.

"Plaintiff introduced and read in evidence the deposition of Miss Ada C. Sheldon, a stenographer and cashier of defendant at Kansas City, who testified, in effect that one Joseph Burton was the agent of the defendant at Moberly; that he sent into the home office at Kansas City an application of Lafferty for insurance in the amount of $400; that the company had written a policy, duly signed by the proper officers, on the application, and sent it to Burton for delivery. This occurred about January 9, 1914. About that date she made out a blank receipt book for Lafferty as insured with defendant and an identification card, doing this in the usual course of business of defendant on receipt and approval of an application for a policy. Hearing nothing to the contrary from the local agent, she mailed these to him on January 20th. The book contained no acknowledgment of a receipt of any premium, but was a book in blank furnished for Lafferty's convenience, in the usual

course of defendant's business, she not having received any notice that the policy had not been delivered to and accepted by Lafferty, or that he had not paid anything, and having no knowledge of his death having occurred on the 18th.

"On this evidence plaintiff rested.

"Defendant interposed a demurrer, which was overruled. It then introduced in evidence the deposition of Joseph Burton, who deposed to the effect that he was the agent of defendant at Moberly and had solicited Lafferty to take out accident insurance with the defendant company, and that Lafferty had made application for insurance amounting to $400 This occurred about January 9, 1914, Lafferty agreeing that he would take the policy and pay for it upon the following Saturday, which was January 10, 1914. He did not, however, take the policy on that date, but on the 15th Burton submitted it to him for his inspection and approval, Lafferty agreeing to pay for the policy the afternoon of that day, if he took it, neither of which he then did; that the policy was left with Lafferty, because he stated he would like to look over it a little more fully before accepting and paying for it. This took place about January 15th. On the 17th following, Lafferty agreed with Burton to either return the policy to him or pay for it, promising to pay or leave the policy for Burton after supper on the evening of the 17th. About seven o'clock that evening Burton called at Lafferty's place of business in Moberly for the money or the policy, whichever Lafferty had left there, but got neither. Burton did not see Lafferty after that date. About eleven o'clock in the morning of January 19th, Burton first heard that Lafferty had been killed on the 18th in the railroad yards at Louisiana. Before he had heard that, and at about eight o'clock on the morning of the 18th, a Mr. Philpott, in whose bakery Lafferty had been employed, called Burton by telephone and asked him to call at his place of business as he wished to pay on Lafferty's insurance policy, and about eight o'clock that morning

Burton went to Philpott's place of business—Philpott and one Dessert being engaged in the bakery business—and asked Philpott what amount he wished to pay on the policy; what amount Lafferty had instructed him to pay, or had left with them to pay on the policy. He was answered by the parties there (Philpott and Dessert) that it did not make any difference; that they, referring to Philpott and Dessert, would pay whatever was due on the policy that Lafferty had in his possession. Burton asked Dessert if Lafferty had left a certain amount, and Dessert answered that he (Dessert) would pay whatever was due. This answer was objected to and stricken out, we think, improperly. Dessert then paid Burton $3.60. This occurred before witness had heard of the death of Lafferty. Upon hearing that, he tendered the $3.60 to Dessert and Philpott in the presence of a Mr. Rothwell. They refused to receive it. Witness afterwards sent the amount to Philpott, and also a like amount to Dessert, by registered mail, neither of which amounts were returned. This sending by registered mail occurred about five or six weeks after the death of Lafferty. Witness stated that he was not in the employ of defendant at the time of giving this deposition and had not been since about October, 1914.

"Another witness deposed to the fact that he was acquainted with Hugh Lafferty; had talked with him about taking out insurance with defendant, witness having a policy in that company, having applied for it about the same time that Lafferty applied for one. Just before Lafferty left Moberly for Louisiana on the 17th or 18th of January, witness was talking with him, and Lafferty told him that he did not think he would take defendant's policy and did not think he would pay for it; said he had a policy with another company that he liked better and was going to take that instead of the policy he had applied for through Burton; that he had a better policy with the Des Moines Company than defendant would give him; had paid for that policy, and did not think he would take defendant's policy.

"Another witness corroborated the witness Burton as to the tender of the $3.60 to Philpott and Dessert and their refusal to receive it.

"Defendant also offered and introduced in evidence an application which Lafferty had made to the Banker's Accident Insurance Company of Des Moines, Iowa, which had been received by that company about January 19, 1914, the application dated at Moberly, January 16, 1914, and in this application Lafferty stated that he had no accident or health insurance in any company, association or society. This was the evidence for the defendant. 'In rebuttal plaintiff offered in evidence the filing of the deposition of Samuel Philpott, taken by defendant in the case and filed January 28, 1915. Defendant's counsel objected to this and said he would read it himself, which he did. Philpott deposed that Lafferty had been in the employ of his firm at Moberly, engaged in the bakery business; that he had left Moberly on January 17, 1914, saying that he was going home, that being Louisiana, Missouri. Asked if he knew anything about Lafferty taking out an insurance policy, he said he did; that he had applied for one a month or six weeks before January 17, 1914; heard of Lafferty being killed on Monday morning, January 19th; heard it as soon as he got to his store Monday morning following; was told by his partner that Lafferty had been killed the day before; had received $3.60 by registered mail from Mr. Burton shortly after the death of Lafferty.

"It should be stated that plaintiff objected to the testimony of Burton on the ground that he was an agent of the defendant company and acting as such in this transaction with Lafferty. This was overruled.

"The defense here is that the policy was neither paid for nor delivered. The fact of delivery or non-delivery is an affirmative defense. [Wells v. Hobson, 91 Mo. App. 379.] It follows that plaintiff made out a prima-facie case by introducing the policy and proving the death of Lafferty within the time covered by the policy, the death the result of external bodily injuries,

accidentally received. Learned counsel for appellant argues with great force that it appears affirmatively that Lafferty did not pay anything on this policy by way of premium or otherwise, and that the testimony of defendant shows affirmatively that the policy was never accepted nor delivered as a policy  That may be, but these were for the determination of the jury. [Erhart v. Dietrich, 118 Mo. 418, l. c. 426, 24 S. W. 188.] The possession of the policy raised the presumption that it had been delivered and paid for, or that credit had been given for the premium.

"Hence the first action of the trial court in taking the case was erroneous. This was afterwards corrected by that learned court, when he sustained the motion for a new trial.

"It is argued that the motion for new trial, if wrong on the ground that error had been committed in taking the case from the jury, or, more accurately, directing a verdict, might have been sustained on the ground that the verdict was against the weight of the testimony. No such presumption can be indulged in where there is an instructed verdict. In such situation the jury does not pass upon the weight of the testimony. So the position of learned counsel for respondent on this point is not tenable.

"The objection to the deposition of Burton, who had been the agent of the defendant company at the time of the transaction, was properly overruled. That is in accordance with the latest decisions of our Supreme Court, as see Wagner v. Binder, 187 S. W. 1128, in Division One, not to be officially reported, and Allen v. Jessup, by Division Two, not to be officially reported, but see 192 S. W. 720.

"The testimony offered on the part of defendant, tending to prove that Philpott and Dessert, in whose employ Lafferty was, or with whom he was connected in business, and who were the parties who made the payment of the premium to Burton, knew or had been informed of the death of Lafferty before they made that

payment, was improperly excluded. It was not hearsay, which was the objection made to it, and it is binding on plaintiff for the reason that their act in making the payment of the premium was in law her act; in making the payment they were acting for and in the interest of plaintiff, and as she is seeking to avail herself of that act, she is bound by their knowledge, if they had any, of the fact of the death of Hugh L. Lafferty when or before they made this payment.

"It follows that the action of the learned trial court in sustaining the motion for a new trial is correct, based on the ground that by the prima-facie case made by plaintiff the case was one for the jury.

"The judgment granting a new trial is affirmed, and the cause remanded for further proceedings. *Allen* and *Becker, JJ.*, concur."

After a careful consideration of the case we are of the opinion that it is in conflict with the Gilmore case before mentioned, and for the reasons stated by the Court of Appeals in this case, that case is overruled and should be no longer followed.

The old familiar rule that the jury is the judge of the credibility of witnesses should not be overlooked, which must not be controlled or interfered with by the court. This is true whether the witnesses are introduced by the plaintiff in support of the allegations of the petition or by the defendant in support of the allegations of the answer. In other words, the rule mentioned absolutely bars the right of the court to instruct the jury to find for the plaintiff, even though hundreds of the most reputable witnesses of the community should testify to the facts stated in the petition; even though their testimony should be uncontradicted, the jury *must still* be the judge of the credibility of the witnesses and the weight to be given to their testimony, and the same would be true as to the testimony of as many other witnesses should they testify to the facts charged in the answer, for the jury alone *must* be the judge of their credibility and the weight to be given to their testimony, and in either case the court has *absolutely no legal*

*authority* to interfere with that *absolute prerogative* of the jury. [Gannon v. Gas Co., 145 Mo. 502.]

We hereby adopt the opinion of the Court of Appeals as the opinion of this court in this case.

For the reasons stated the judgment of the Common Pleas is affirmed. All concur; *Graves, J.,* in separate opinion.

GRAVES, J. (concurring).—I agree that the presumption of a delivery arose upon the showing that the policy was in possession of the deceased. This is purely a presumption as to the fact of delivery, and is a re buttable presumption. Without adverse proof the presumption made a prima-facie case for the jury for plaintiff, but here we have the presence of the facts, destroying the presumption, if those facts are to be taken as proven. So that we get to the old question in Gannon v. Gas Co., 145 Mo. l. c. 515; Trust Co. v. Hill, 283 Mo. 278. The facts shown made a prima-facie case for the jury, and under Gannon v. Gas. Co., supra (a case which I have always followed, but at times with much reluctance), this prima-facie case left to the jury the determination of the credibility of the evidence offered by defendant. Under Gannon's case and its predecessors, and many successors (as late as Keller v. St. Louis Butchers Supply Co., at this term of the court) the delivery of the policy sued upon was for the jury. But, whilst under our rule the case should have been submitted to the jury, the trial court has the peculiar power to prevent the miscarriage of justice by setting aside a verdict which is against the weight of the evidence. [Keller v. Supply Co., supra.] This is one of the cases where the trial court should function aright on the motion for new trial, if such motion charges that the verdict of the jury was against the weight of the evidence. This question was not in the instant case, because there was, in the first instance, a directed verdict for defendant. It may be in a future trial of the case.

With these additional observations, I concur in the opinion.