# ANNA TOPINKA v. MINNESOTA MUTUAL LIFE INSURANCE COMPANY.[1]

May 12, 1933.

No. 29,351.

[1]Reported in 248 N. W. 660.

*John P. J. Dolan* and *Raymond N. Klass*, for appellant.

*Doherty, Rumble, Bunn & Butler* and *Robert O. Sullivan*, for respondent.

*STONE, Justice.*

In this action on a policy of life insurance plaintiff had a verdict. Thereupon defendant moved for judgment notwithstanding the verdict or a new trial. The motion for judgment notwithstanding was granted, and plaintiff appeals.

Defendant is, as its name indicates, a Minnesota mutual life insurance company, doing business on the old line plan. Plaintiff sues as beneficiary of the policy in suit, issued by defendant on the life of her son, Rudolph Topinka. He made application for the insurance at Cedar Rapids, Iowa, September 28, 1923. The policy was issued and dated October 5 and delivered to the insured at Cedar Rapids October 8, 1923. It was an ordinary $1,000 life policy on the 20-payment plan. The application, made part of the policy, provided "that in determining the due dates of any Premium the reckoning shall be from the date of the Policy." The latter stated that it was issued "in consideration of the payment in advance of the annual premium of thirty-three and 33/100 dollars and of the further payment of a like sum on or before the fifth day of October in every year until premiums have been paid for a period of twenty years, or until the prior death of the Insured." All premiums were made payable in advance at the home office of the company at St. Paul or to an agent upon delivery of a receipt signed by the president or secretary and countersigned by said agent. Subject to a grace of one month, it was provided that "the payment of any premium or instalment thereof shall not maintain the Policy in force beyond the date when the next premium or instalment thereof is payable." The first premium was paid to defendant's soliciting agent at Cedar Rapids. There was premium default on the first anniversary of the policy, October 5, 1924. On

the insured's application, the policy was reinstated November 21, 1924, but on the payment of a six-months' rather than a one-year's premium. So another semi-annual premium instalment of $17.33 became due April 5, 1925. If that payment was not made, the policy was not in force June 22, 1925, when the insured died. The insurance had not been in force long enough to make effective its standard provisions for automatic extension upon premium default.

The complaint alleged the execution and delivery of the policy, and that the insured, "beginning with the payment of the first premium at or about November 17, 1923, did and performed all the terms and conditions of the said contract to be done and performed by him." The defense is that the policy lapsed for nonpayment of the premium due April 5, 1925. At the trial, death of the insured and date thereof admitted, plaintiff introduced the policy and rested. For defendant, the evidence consisted of the home office records hereinafter mentioned. By those records, and not otherwise, was it proved that the premium due April 5, 1925, was not paid and that in consequence the policy had lapsed before the insured's death.

■ Death of the insured admitted, production of the policy made a prima facie case for plaintiff. That is established by a long line of decisions. Hinchliffe v. Minnesota C. M. Assn. 142 Minn. 204, 171 N. W. 776. The rule is especially appropriate where the insurer is a mutual company, whereof issue of the policy makes the insured a member. Such a status, once established, may be presumed to continue for what, under the circumstances, is a reasonable time.

■ But the rule is a general one, its application varying in accommodation to facts. It is urged for plaintiff, with some authority in support (to be considered later), that it not only made a prima facie case for her but also shifted the whole burden of proof to defendant. That impossible extension of the rule can be achieved only by ignoring controlling factors.

Such cases as Lafferty v. Kansas City Cas. Co. 287 Mo. 555, 229 S. W. 750, to the contrary notwithstanding, nonpayment of the premium was not an affirmative defense. Plaintiff undertook to

establish contract liability. The burden of establishing it was on her at the beginning and remained so to the end. Hers was the burden of establishing every essential of liability. Issue of the policy was but the initial element. Proof of that had to be followed, in order to sustain plaintiff's case, by evidence that the insured had performed the obligations necessary to continue the insurance beyond the time of his death. Upon plaintiff, then, was the burden to prove that the premium due April 5, 1925, had been paid.

Many of the cases (for collections of which see 4 Cooley, Briefs on Ins. [2 ed.] p. 3863, et seq; 8 Couch, Ins. § 2223) correctly say that by production of certificate or policy a distinct burden is shifted to the insurer if some affirmative action by the company was prerequisite to obligation to pay premium or assessment. Where the insurer must make an assessment and give notice before the insured is obliged to pay, the burden is upon it to prove the assessment, notice, and nonpayment. In such cases, there is a condition to be performed by the insurer precedent to liability of the insured to pay. That condition is normally present in fraternal and other assessment insurance.

But a very different situation is inherent in and characteristic of old line life insurance. Nothing affirmative is required of insurer after delivery of the policy. Not even is notice of premium maturity required. The standard provisions for automatic extension out of the case, as they are here, lapse is automatic upon expiration of the period of grace after nonpayment of a premium. New York L. Ins. Co. v. Statham, 93 U. S. 24, 23 L. ed. 789. In that connection, the idea of forfeiture and all its harsh implications are much overworked. There is no forfeiture in any proper sense. The insurance has no existence from year to year except for the premium payments essential to its continuance. Mutual L. Ins. Co. v. Girard L. Ins. Co. 100 Pa. 172, 180. The insured's omission to pay a premium forfeits nothing. He but fails to exercise his option to purchase an extension. That is no more forfeiture than is the failure of a lessee to renew a lease which he has the option to renew merely by prepayment of a stipulated rent.

Plaintiff having the affirmative, it was incumbent upon her to sustain the burden of proof, not only of the issue of the policy but also that it was in force at the insured's death. Payment of the first premium, unless credit was extended or payment otherwise waived, was condition precedent to the going into effect of the policy. In similar fashion, payment of each additional premium during the period here in question was condition precedent to renewal and consequent continuation of defendant's liability. New York L. Ins. Co. v. Statham, 93 U. S. 24, 23 L. ed. 789. Such conditions differ broadly from those others the nonperformance of which may defeat a right already accrued and are therefore in the nature of defeasances. Compare Chambers v. N. W. Mutual L. Ins. Co. 64 Minn. 495, 497, 67 N. W. 367, 58 A. S. R. 549.

Without attempting their review here, it will be found that many of the numerous cases frequently cited in support of the idea that the production of a policy shifts the burden of proving nonpayment to the insurer mean only that a prima facie case is made for the plaintiff; and that while the burden of proving all essentials of the cause of action remains with plaintiff, the burden of going forward with evidence is shifted to the defendant insurer.

Possession of the policy "is merely prima facie, and is subject to be rebutted." Bostick v. New York L. Ins. Co. (C. C. A.) 284 F. 256, 258; O'Connell v. F. & C. Co. 87 App. Div. 306, 84 N. Y. S. 315. "Accurately speaking, the burden of proof never shifts in the trial of a lawsuit." Lebens v. Wolf, 138 Minn. 435, 436, 165 N. W. 276, 277, L. R. A. 1918C, 868. "We do not adopt the doctrine that the burden of proof shifts from time to time in the trial." Piepho v. M. Sigbert-Awes Co. 152 Minn. 315, 317, 188 N. W. 998. See also Ertsgaard v. Bowen, 183 Minn. 339, 237 N. W. 1, where there was the same dual error that now permeates the argument for plaintiff. There was first failure to distinguish between the burden of proof resting on the affirmative and that different thing, the necessity of going on with the evidence. Then there was, as here, a mistaken attempt to take from the plaintiff's case one element and to shift to the defendant the burden of negative proof, whereas the load was on

the plaintiff to establish the positive. This court has long been committed to the proposition that "the burden in every case rests on the litigant who has the affirmative of an issue to prove it; otherwise, his opponent wins." McEleney v. Donovan, 119 Minn. 294, 300, 138 N. W. 306, 308.

That the burden of proof of nonpayment of the premium was shifted to defendant by plaintiff's production of the policy is the rule in Missouri. Harris v. Security L. Ins. Co. 248 Mo. 304, 154 S. W. 68, Ann. Cas. 1914C, 648. It seems to have had its beginning in Gannon v. Laclede G. L. Co. 145 Mo. 502, 46 S. W. 968, 47 S. W. 907, 43 L. R. A. 505, a res ipsa case. Three judges dissented, p. 548, observing that the rule would permit juries to decide causes "according to their discretion, and not according to the evidence." The Gannon case, 145 Mo. 502, 46 S. W. 968, 47 S. W. 907, 43 L. R. A. 505, was followed in one on an insurance policy in Lafferty v. Kansas City Cas. Co. 287 Mo. 555, 229 S. W. 750. One judge concurred specially, p. 566, but with sharp criticism of a doctrine he followed "with much reluctance." See also Pauley v. Business Men's Assur. Co. 217 Mo. App. 302, 261 S. W. 340, and Foster v. Metropolitan L. Ins. Co. (Mo. App.) 233 S. W. 499. Very common has it been for judges carelessly to say that a prima facie case for a plaintiff shifts the burden of proof to the defendant. Like the rule res ipsa loquitur, the one now under consideration has been the occasion for many decisions which hold or imply, incorrectly, that a prima facie case has that effect. It does no such thing. All it does is to put on him the burden of going on with the evidence. Annotations, 16 L.R.A.(N.S.) 527; L. R. A. 1916A, 930. All a prima facie case can properly mean is that defendant "is bound to controvert it by evidence, otherwise he will be cast in judgment." Farmers L. & T. Co. v. Siefke, 144 N. Y. 354, 359, 39 N. E. 358, 359; 6 Wd. & Phr. (1 ser.) 5549.

The matter need not be considered further because, as already shown, our rule has long been settled. It is supported by an overwhelming weight of authority. The idea that a mere presumption can shift the burden of proof from the affirmative to the negative

was expressly negatived in Sweeney v. Erving, 228 U. S. 233, 33 S. Ct. 416, 57 L. ed. 815, Ann. Cas. 1914D, 905. In Smith v. Hill, 232 Mass. 188, 191, 122 N. E. 310, 311, 2 A. L. R. 1667, the gist of decision is in these words of Mr. Chief Justice Rugg.

"A prima facie case or prima facie evidence does not change the burden of proof. It only stands until its weight is met by evidence to the contrary. * * * The burden of proof continues to rest upon the party who either as plaintiff or as defendant asserts the fact necessary to enable him to prevail. He must ultimately establish that fact before he can become entitled to a finding or verdict in his favor." The burden of maintaining the affirmative "is upon the party alleging the fact which constitutes the issue, and this burden remains throughout the trial." If all he has is a prima facie case, his opponent need not overcome it by a preponderance of evidence. The latter prevails if only he can "equalize" or just counterbalance his adversary's case. First Nat. Bank v. Ford, 30 Wyo. 110, 119, 216 P. 691, 31 A. L. R. 1441.

Even the "few" authorities there cited in support are too numerous for present repetition. They come from New York, Ohio, Iowa, Massachusetts, Oregon, Connecticut, Indiana, and the Supreme Court of the United States (Sweeney v. Erving, 228 U. S. 233, 33 S. Ct. 416, 57 L. ed. 815, Ann. Cas. 1914D, 905), and several text writers.

While plaintiff did make a prima facie case by putting the policy in evidence, the burden of proving nonpayment of the essential premium was not thereby shifted to defendant. The burden of affirmative proof, that is, that the payment was made, remained with plaintiff. But having made a prima facie case, plaintiff was entitled to insist, as she did, that the necessity of going forward with the evidence had been transferred to defendant.

■ Without describing them, it is sufficient to say that defendant introduced its records, and seemingly all of its records, of the policy. The extent of the foundation for such documentary proof rests in the discretion of the trial judge. There is no indication of abuse of discretion. Defendant's policy records not only showed

that the premium due April 5, 1925, had not been paid, but also indicated that a notice that it was due, or to become due, had been mailed to the insured without response. Our recent decisions in Watson v. Gardner, 183 Minn. 233, 236 N. W. 213, and Schoonover v. Prudential Ins. Co. 187 Minn. 343, 245 N. W. 476, establish the admissibility of the policy records of defendant. Tiedt v. Larson, 174 Minn. 558, 219 N. W. 905, while not altogether irrelevant, is not squarely in point, because the record there dealt with was that of a third party and not a litigant, as here.

Insurance of all kinds, particularly old line life insurance, is now matter of close and exact government regulation and supervision. Its actuarial and accounting necessities are such that it simply could not go on without accurate and dependable policy records. "There must be power to cut off unprofitable members, or the success of the whole scheme is endangered." New York L. Ins. Co. v. Statham, 93 U. S. 24, 31, 23 L. ed. 789. Aiding the presumption that such records are truthful is the utter and constant necessity that they speak the truth. As matter of plain business sense, their verity must be presumed until properly questioned by evidence. The presumption of good faith "is one of the strongest," and always prevails "over one giving rise to an inference of guilt or bad faith." Coffman v. Christenson, 102 Minn. 460, 465, 113 N. W. 1064, 1066. So there is nothing to the suggestion that a jury may disregard such records, when unimpeached, simply because they are those of a litigant.

The policy records, while not books of account in the ordinary sense (see Tiedt v. Larson, 174 Minn. 558, 219 N. W. 905) yet showed the state of the insured's account with defendant in relation to the policy in suit. If they had been kept in the form of debit and credit entries, they would have been admissible as books of account. Yet there would have been no added assurance of veracity.

■ The concluding argument for plaintiff is that, with the presumption arising from plaintiff's possession of the policy, opposed by defendant's records showing nonpayment of the premium, there was a fact question, and so the verdict should stand. That argu-

ment, if allowed, would mean that in every such case, no matter how dead the policy or how convincing of nonpayment and lapse the insurer's records, a jury would be permitted to find for the plaintiff. It would permit indiscriminate looting of insurance companies. The idea is abhorrent to the basic and just principles of orderly judicial proof.

True, the prima facie case for plaintiff permitted temporarily a presumption that the insured had done whatever was necessary to continue the insurance. But that presumption was neither conclusive nor enduring. It could be rebutted, and was by defendant's records showing nonpayment. Unimpeached and uncontradicted, they are not open to adverse presumption. Like other evidence, they were open to attack because of inherent defect or contradicting evidence. Nothing of that kind is in the record. If we treat the case as one of opposed presumptions, the inference that defendant's records speak the truth settles the matter, because it is for the negative of the one issue and at least offsets or balances the inference arising from plaintiff's possession of the policy. The evidence is thereby put in a state of equipoise, and the negative must prevail. First Nat. Bank v. Ford, 30 Wyo. 110, 216 P. 691, 31 A. L. R. 1441. But it is not correct to say that the two presumptions are opposed. It is more accurate to say that plaintiff's presumption was a temporary thing standing in the place of evidence only until evidence was forthcoming. Defendant's later evidence raised a presumption of nonpayment which supplanted the presumption in plaintiff's favor, and so required a decision for defendant as matter of law. That is because "the ultimate key to the situation" is the fact that the burden of proof of final persuasion was on plaintiff. 5 Wigmore, Ev. (2 ed.) § 2493. At best and as matter of law, we have an equation of evidence always fatal to the affirmative, as it was in Summit v. U. S. L. Ins. Co. 123 Iowa, 681, 99 N. W. 563.

Unlike Burud v. G. N. Ry. Co. 62 Minn. 243, 64 N. W. 562, this is not a case where different conclusions may reasonably be drawn from the record or where the credibility of the controlling evidence

is doubtful. Scheufler v. Grand Lodge A. O. U. W. 45 Minn. 256, 47 N. W. 799, is distinguishable because it was an assessment insurance case, where notice to the insured and other affirmative action had to be taken by the insurer as conditions precedent to lapsing the policy. In the same category are Petherick v. Order of Amaranth, 114 Mich. 420, 72 N. W. 262, and Rousseau v. Brotherhood of American Yeomen, 186 Mich. 101, 152 N. W. 939. In the Rousseau case the defendant's evidence of nonpayment was considered so unsatisfactory and contradictory as to make a jury question as to its credibility. In Schwartz v. Germania L. Ins. Co. 21 Minn. 215, the defendant's evidence was uncontradicted, but it was inherently questionable for reasons stated in the opinion.

That the insured in the instant case is dead has nothing whatever to do with the burden of proof. If there is anything in the argument that it put upon defendant the duty of producing its own evidence of payment or nonpayment, the answer is that defendant did so, for there is not even a suggestion that it has withheld any proof within its possession.

The foregoing does not cover explicitly much argument for plaintiff questioning the competency of the policy to fix definitely the date for payment of premiums and claiming that because it did so there resulted a question of discrimination of such character as to prevent the lapsing of the policy. We do not deal further with that and other points because we do not find in them sufficient merit to warrant discussion under the law of Iowa. The policy was an Iowa contract governed by the law of that state. But, as already appears, the case must go to decision on questions of evidence, of which the local law is determinative.

Affirmed.

*DIBELL, Justice* (concurring).

I concur in the result.