JAMES A. GIBSON, Guardian and Curator of CHARLES F. SIGLER and THOMAS G. SIGLER, Minors, LUCILE M. SIGLER, a Minor, by J. W. CLINE, her Guardian and Curator, and ELNORA SIGLER and EDWARD O. SIGLER, Respondents, v. PIONEER LIFE INSURANCE COMPANY, Appellant.

Kansas City Court of Appeals, June 1, 1914.

1. **LIFE INSURANCE: Premium: Notes in Payment of.** A life insurance company may accept a note in payment of the premium on a policy issued by it, if there is nothing in the terms of the policy which precludes the acceptance of notes for such purpose.

2. **CONTINUANCES: Discretion of Court.** The law accords a wide discretion to trial courts in dealing with applications for continuances and appellate courts do not interfere in such matters unless it be made to appear that there has been a clear case of abuse of discretion.

3. **LIFE INSURANCE: Evidence: Burden of Proof.** Sec. 6978, R. S. 1909, provides that applications for life insurance policies should be copied into the policy and made a part thereof. This casts the burden upon the insurer to show that the premium, in fact, had not been paid and that the policy had not gone into effect.

Appeal from Buchanan Circuit Court.—*Hon. Wm. D. Rusk*, Judge.

AFFIRMED.

*Howard & Washburn* for appellant.

(1) The court erred in overruling defendant's application for a continuance. Nichols v. Grocer Co., 66 Mo. App. 321; Alt v. Grosclose, 61 Mo. App. 409. (2) The court erred in refusing Instruction "A," requested by defendant, which was an instruction to direct verdict in defendant's favor, for the reason

that it appeared from the evidence of plaintiffs that the policy sued on herein was issued on an application made to the National Security Life Insurance Company, a company organized under the stipulated premium plan; and for the further reason that the defendant in executing said policy exceeded its corporate powers, and that no legal contract of insurance ever existed between defendant and said E. B. Sigler. Drug Co. v. Robinson, 81 Mo. 26; Hill v. Coal Co., 119 Mo. 31; Insurance Co. v. Smith, 117 Mo. 261; State v. Murphy, 134 Mo. 566-567; Chenoweth v. Pacific Express Co., 93 Mo. App. 185.

*Charles F. Strop* and *Eugene Silverman* for respondents.

(1) The testimony upon defendant's application for a continuance showed an entire absence of diligence on the part of defendant and the application was properly overruled. The granting and refusing of a continuance is largely discretionary and there must be a satisfactory showing that the trial court has abused its discretion. And the ruling of the trial court is entitled to every intendment in its favor. Rhodes v. Guhman, 156 Mo. App. 361; Pidgeon v. United Rys. Co., 154 Mo. App. 27; Railway v. Holladay, 131 Mo. 457; Shirk v. Shirk, 75 Mo. App. 581; Bartholow v. Campbell, 56 Mo. App. 118; Leabo v. Goode, 67 Mo. 132. (2) Where all the evidence in a case is of such character that it affords no room for reasonable controversy about an ultimate fact, there can be no issue, and therefore nothing concerning such fact for the triers of fact to determine. Richey v. W. O. W., 163 Mo. App. 246; Dunham v. Joyce, 129 Mo. App. 5; Straus v. Chewing Gum Co., 134 Mo. App. 114; Callahan v. Warne et al., 40 Mo. 137; Boland v. Railroad, 36 Mo. 491.

JOHNSON, J.—This is an action begun April 20, 1912, by the beneficiaries of a policy of life insurance

issued by defendant April 10, 1911, on the life of Edward B. Sigler, who died March 6, 1912, at his home in St. Joseph. The principal defenses are based on the alleged facts that the assured failed to pay the premium of $241.10, for the first year or any part thereof, and that the policy was issued without a written application to defendant but upon an application addressed to another company for a different kind of policy. After taking the deposition of the former president of defendant who was in office at the time the policy was issued, plaintiffs on May 5, 1913, amended the petition by adding the charge of a vexatious refusal to pay and demanding the assessment of a penalty and attorney's fees as allowed by statute in such cases. An answer was filed to the amended petition May 8th, and the cause was set for hearing May 23d. When it was called, defendant filed a motion for a change of venue which was sustained and the cause was transferred to another division of the court and set for trial on June 3d. On that date defendant filed an application for a continuance which was heard and overruled on the ground of a lack of diligence in defendant.

The cause then was tried with the aid of a jury and a verdict was rendered for plaintiffs in the sum of $6325.00, which included the amount due on the policy with interest, and attorney's fees and penalty to the amount of $1000.00. Motions for a new trial and in arrest were filed by defendant and overruled by the court whereupon defendant appealed.

At the time the policy was issued the corporate name of the defendant was the St. Louis National Life Insurance Company but in a short time thereafter its name was changed to the Pioneer Life Insurance Company of America and the headquarters of the company were removed from St. Louis to Kansas City. Sigler was a life insurance agent at St. Joseph and there is evidence tending to show that he was an agent of defendant when he applied for and received the policy

in suit. It appears that during the second month following the issuance of the policy internal dissensions in the company culminated in a complete change of officers. George H. Harrison who had been president about three months resigned and his retirement was followed by that of T. A. Roberts, secretary. In the following July, R. C. Van Dyke, who had been a special examiner for the State Insurance Department and as such had recently investigated the affairs and books of defendant, was elected secretary. He appeared as the principal witness for defendant but his knowledge of vital facts pertaining to the issues made by the pleadings was confined to that received from an inspection of defendant's books and papers which contained no record of the payment of the premium on this policy and did include a written application for a policy signed by Sigler and addressed to another company. The court sustained plaintiff's objection to the admission of this application in evidence.

The facts about which there is no controversy are that the policy was issued and delivered by defendant to Sigler on or about April 10, 1911; that Sigler died March 6, 1912, with the policy in his possession and that in response to notice of his death and to the request of his beneficiaries for blank proofs of loss, defendant replied denying liability on the ground of nonpayment of the first premium.

The policy introduced in evidence by plaintiffs is known as a "Twenty Payment Life, Double Indemnity Non-Participating Policy" and recites that it' "is issued in consideration of the written and printed application therefor, which is hereby made a part hereof, and of the payment in advance of two hundred and forty-one and ten/100 dollars for one year's term insurance," and closes with copies of the "Answers made to medical examiner" of defendant and of an application which purports to have been made in writing to

defendant and contains the statement and agreement: "I have paid . . . the first premium, as stated above, and hold the detached receipt from my application therefor, showing that I have paid the agent for the first annual premium which shall be forfeited by me should I refuse or neglect to be examined by the company's regular examining physician," and "I hereby agree that this application and the answers made to the medical examiner and the policy applied for shall constitute the entire contract between the parties hereto." It is pertinent to add that the application was for a policy in the amount and of the class of that issued by defendant and now in controversy.

A copy of the following letter obtained from defendant's files and addressed to Sigler was introduced in evidence by defendant:

"May 15, 1911.

Mr. E. B. Sigler,
        St. Joseph, Mo.
Dear Sir:

When I saw you in Kansas City you told me you would send in the notes you had in settlement of the St. Louis National Insurance policies, but as yet we have not heard from you.

Kindly let us hear from you by return mail in regard to this matter.

Very truly yours,
                Secretary."

A copy of another letter which Van Dyke testified he wrote to Sigler three days later also was introduced and is as follows:

"May 18, 1911.

Mr. E. B. Sigler,
        St. Joseph, Mo.
Dear Sir:

As a representative of the State Insurance Department, I have found upon examination of the company's books, that there have been eight policies sent to you

for delivery and upon which the company has received no settlement. Upon presentation of this letter by Mr. Roberts you will please turn over to him the policies designated in the enclosed list or settlements in accordance with your contract.

Very respectfully,

Special Examiner.''

Van Dyke states that the policy in suit was one of the eight mentioned in this letter for which Sigler, as the agent of defendant, had not settled. So far as the records of defendant disclosed Sigler did not answer either of these letters. No demand was subsequently made by defendant upon Sigler for the return of his policy or of any of the other policies referred to in Van Dyke's letter which was written before he became the secretary of defendant. During the direct examination of Van Dyke, he was asked: ''Have you the books of the company showing the receipts for premiums during the time that you were secretary?'' To which he replied, ''I have the cash book.'' He produced a cash book which appeared to cover a period ante-dating the date of the policy and continuing until after the death of Sigler. Witness stated that he had seen and examined the book while performing his duties as special examiner of the Insurance Department and when he became secretary of the company the book was turned over to him as its cash book and thereafter remained in his custody. Witness, of course, had no personal knowledge of the accuracy or correctness of the entries made in the three months intervening between the date of the policy and the date of his induction into the office of secretary, since the entries were not made by him nor under his supervision. No witness was called to identify the books and vouch, under oath, for their accuracy. Defendant offered the cash book in evidence for the purpose of showing that it contained no entry of a payment by Sigler of his first premium or any part thereof, but the court sustained

the objection of plaintiffs to the offer and excluded the book.

Mr. Harrison, who, as stated, was the president of the company when the policy was issued, testified in his deposition taken by plaintiffs that Sigler executed and delivered to defendant his promissory note for the premium, that he received and accepted the note as president and turned it over to the secretary, T. A. Roberts, who was the proper custodian of such papers, as well as of the books of account and records of the company. Roberts was not called as a witness by either party. The ground of defendant's application for a continuance was that if the testimony of Roberts could be obtained it would contradict Harrison and tend to show that Sigler did not give his note in settlement of the premium. The court heard the evidence on the issue of the diligence of defendant in attempting to procure his testimony, from which it appeared that after Roberts had been ousted as secretary in May, 1911, he was unsettled in his business affairs and was away a great deal from his home which continued to be in Kansas City; that after Harrison's deposition was taken he was at home a week or more and that one of the attorneys for plaintiff on a visit to Kansas City looked in the city and telephone directories, found his address in both, went out to his house, interviewed his daughter and was given his office address with the statement that he could be found there any time within a week. The officers and attorneys of the defendant lived in Kansas City and easily could have found Roberts and arranged to take his deposition had they made a reasonable effort.

The law accords a wide discretion to the trial court in dealing with applications for continuance and appellate courts do not interfere in such matters unless it be made to appear that there has been a clear abuse of discretion. [Rhodes v. Guhman, 156 Mo. App. 344; Pidgeon v. Railways, 154 Mo. App. 20; Railway v. Holladay, 131.

Mo. 440; Shirk v. Shirk, 75 Mo. App. 573; Bartholow v. Campbell, 56 Mo. App. 117; Leabo v. Goode, 67 Mo. 126.] The court was justified in believing that defendant, even under the spur of Harrison's adverse testimony, made no attempt to find that which was not lost, and further, that reasonable prudence would have prompted it, from the very inception of the case, to have diligently hunted for a witness who had accurate knowledge concerning the most vital facts of the case. One cannot escape the conclusion that if Roberts' knowledge of such facts had been favorable to the defense, his testimony would have been procured. No error was committed in overruling the application for a continuance.

Passing to the issues relating to the merits of the case we are constrained to hold that defendant has utterly failed to oppose a substantial defense to the prima-facie case of plaintiffs. The positive assertions in the face of the policy and in the application which the statute provided should be copied into the policy and made a part thereof (sec. 6978, R. S. 1909) cast the burden of proof upon defendant to show that the premium, in fact, had not been paid and that the policy had not gone into effect. The attempt of Van Dyke to testify in aid of defendant's contention is futile since he had no knowledge of the facts relating to the payment that was not second hand and clearly hearsay, and if the court had admitted the unidentified cash book, it would have shown nothing except the fact that no entry of a cash payment of the premium had been made. This could not have raised an evidentiary controversy with the positive declaration in the policy that the premium had been paid since it was perfectly consistent with payment by note, as testified by Harrison, or with payment in cash to the secretary which, for some reason, he had failed to enter in the cash book. There was nothing in the terms of the policy which precluded

defendant from accepting Sigler's note in settlement of the premium and without such prohibition the parties were at liberty to agree that the premium should be paid by the note of the assured instead of in cash without impairing the validity of the contract of insurance. Certainly the declaration in the policy could not be refuted by proof tending to show the absence of payment by one of two or more possible modes. This view of the issue of nonpayment relieves us of the necessity of considering the question of the admissibility of the cash book since it admitted it would not have sustained defendant's burden of proof.

But it is argued in substance that since Sigler was the agent of defendant the delivery of the policy to him was not a delivery to the assured but to an agent of defendant for delivery to the assured. This attempted distinction is too fine spun to merit serious consideration. Conceding that Sigler was the agent of defendant, he was also an applicant for insurance and a delivery of the policy to him was a delivery to the assured.

Finally it is urged that the act of the officers of defendant in issuing a policy without a written application to defendant for such policy was *ultra vires* and the policy is void on that account. The primary weakness of that contention lies in the absence of any competent evidence to support it. The policy, in obedience to the statute, sets out the application upon which it was issued and that application shows that it was addressed to defendant and was for the kind of policy issued. Aside from other considerations the burden was on defendant to overcome this prima-facie proof of compliance with the statute. The only evidence offered is the testimony of Van Dyke, who has no personal knowledge of what was done, that he found among the papers of defendant no application conforming to that copied in the policy, but did find one on the blank of another company for another kind of policy.

Such facts could not be distorted into proof of falsification in the policy without resort to the most unsubstantial sort of conjecture and speculation. All of the defenses are so obviously without merit that the court with propriety could not have done otherwise than to submit to the jury the issue of vexatious refusal to pay.

Objections to the rulings on the instructions have been sufficiently answered. There is no prejudicial error in the record. Affirmed.

All concur.