S. V. MEDLING, ADMINISTRATOR OF WELTON K. FOSTER, DECEASED, RESPONDENT, v. ABRAHAM LINCOLN LIFE INSURANCE COMPANY, A CORPORATION, APPELLANT.—41 S. W. (2d) 6.

In the Springfield Court of Appeals. July 3, 1931.

*Orville Zimmerman* for appellant.

*S. V. Medling* and *Ward & Reeves* for respondent.

BAILEY, J.—Plaintiff, as administrator of the estate of Welton K. Foster, deceased, instituted this suit upon a policy of insurance

issued by defendant upon the life of said Welton K. Foster, deceased, seeking to recover $2000, the face of the policy, together with penalty and attorney fees for vexatious delay. On trial to a jury, plaintiff was returned a verdict in the sum of $2,017.50 on the policy and the further sums of $100 and $200 as penalty and attorney fees, respectively, on the theory that defendant vexatiously and without reasonable cause refused to pay the amount due under the policy. Defendant has appealed from the judgment based thereon.

Defendant asserts the trial court erred in refusing defendant's demurrer to the evidence offered at the close of the whole case, in that the allegations of the petition were not proven and that there was not proof that the first annual premium had been paid. The petition was in conventional form and among other things alleged that, "at the time of the death of the said Welton K. Foster on the 25th of July, 1930, said policy of insurance was in full force and effect and the said Welton K. Foster had kept and performed all of the requirements and conditions of said contract of insurance on his part to be kept and performed, and the whole amount became due to plaintiff upon his death as aforesaid, and after the death of the said Welton K. Foster demand was made of defendant to furnish blanks upon which to make proof of loss and death, but defendant failed and refused to furnish same, and defendant has failed and refused to pay the amount due plaintiff under said policy of insurance, to-wit, the sum of $2000 though demand has been made upon defendant therefor."

In defendant's answer it is alleged that only the first quarterly premium was paid and that the policy had lapsed. Plaintiff's evidence on that branch of the case consisted of the insurance policy issued by defendant to deceased, which policy contained the following provisions: "Age 22,

"Number 44998, Premium $58.20 Amount $2,000.

"An Old Line Legal Reserve Stock Company.

"Abraham Lincoln Life Insurance Company, Springfield, Illinois.

"Hereby agrees to pay Two Thousand Dollars (the face amount of this policy) upon receipt of due proof of the interest of the claimant and of the death of Welton K. Foster, the Insured, to The Insured's Executors, Administrators or Assigns subject to the terms and conditions hereinafter contained.

"This Policy is Issued in consideration of the application therefor, copy of which is attached hereto and made a part hereof, and of the payment in advance of Fifty-eight and twenty-one-hundredths Dollars, being the premium to provide the legal reserve, if any, hereunder, and term insurance terminating on the Twenty-eighth day of October, 1930, and of the further payment of an annual renewal premium of like amount on the said date and on every anni-

versary thereof during the life of the insured until premiums for Twenty full years in all shall have been paid.''

It is also provided thereon that the policy, together with the application therefor, constitutes the entire contract.

The policy further provided that, ''All premiums are payable in advance at the Home Office of the Company but may be paid to an authorized agent of the Company but only in exchange for the Company's official premium receipt signed by the President or Secretary and countersigned by such agent. This contract is based upon premiums being paid annually, but, upon written request of the Insured to the Company at its Home Office, premiums may be made payable in semi-annual or quarterly installments, each such semi-annual premium being fifty-two per cent and each quarterly premium twenty-six and one-half per cent of the annual premium. Any payments required to complete the premium for the current policy year in which death occurs will be deducted from the insurance payable hereunder. No payment of a premium shall maintain the Policy in force beyond the date when the next payment is due, except as herein provided.''

The application, a part of the insurance contract, contained the following statements, ''Gross Premium, Annual basis $58.20. Premiums to be payable Annually (), Semi-Annually, (), Quarterly, (x) xxxxx I hereby declare that I have paid the sum of Fifteen and forty-two-one-hundredths Dollars made by check to J. L. Ralston and that I hold his receipt made up without alteration on the receipt form detached from this application and bearing the serial number imprinted thereon, to the terms of which I agree.'' Defendant offered documentary evidence tending to prove that but one quarterly payment was made at the time the policy was taken out in October, 1929, and that no other quarterly payments were made, although warning and danger notices were mailed insured; that a quarterly payment became due January 28, 1930, and was not paid, and the policy lapsed in February, 1930; that, thereafter, three letters were mailed by defendant to insured, urging him to re-instate the policy but no reply thereto was received and the letters were not returned; that at the time of insured's death, on July 25, 1930, a third quarterly premium remained unpaid. Defendant also offered in evidence its premium record card kept at the home office in Springfield, Illinois, showing the failure to pay quarterly premium and lapse of the policy, ''2-30.'' (If this means February 30, it was of course, an impossible date.) At any rate, the policy had lapsed according to this card record. In rebuttal plaintiff offered evidence, over defendant's objection, tending to prove that there was an erasure on the card. It was not shown what had been erased or when the erasure was made or by whom.

Plaintiff asserts he made out a prima-facie case by showing death of Welton K. Foster, offering the policy of insurance in evidence and showing plaintiff's appointment as administrator. It is further contended that since the policy showed on its face payment of the first annual premium, the burden was on defendant to prove non-payment.

It is our opinion plaintiff's contention is correct. While the recital in the policy that it, "is issued in consideration of the application therefor and the payment in advance of Fifty-eight and twenty-one-hundredths Dollars, being the premium to provide xxx insurance terminating on the 28th day of October, 1930," is not an acknowledgment of the receipt of the first annual payment, yet the application itself shows that at least the first quarterly payment was made and the policy went into effect. There is, in fact, no denial that the policy became a valid and binding contract. The only issue was whether or not the subsequent quarterly payments were made. Upon such state of facts, the burden has always been held to be upon defendant to prove subsequent premiums were not paid when due. [Rasch v. Ins. Co., 201 S. W. 919; Harris v. Ins. Co., 248 Mo. 304, l. c. 318, 154 S. W. 68; Lafferty v. Ins. Co., 287 Mo. 555, 229 S. W. 750; Gibson v. Ins. Co., 181 Mo. App. 302, 168 S. W. 818; Hay v. Ins. Co., 207 Mo. App. 277, 231 S. W. 1035.]

In Rasch v. Ins. Co., supra, l. c. 924, it is also pointed out that, "it has often been held that even though the evidence in support of such defense is uncontradicted, still the issue must be submitted to the jury in order that they may determine the credibility of that evidence, and that the court in such case cannot direct a verdict." Defendant has cited a number of cases holding that a recital in the face of the policy that it is issued in consideration of an annual premium in a certain amount, is overcome by a recital in the application showing the premium was to be paid quarterly. Among these cases are the following: [Missouri State Life Ins. Co. v. Salisbury, 213 S. W. 786; Dircks v. German Ins. Co., 34 Mo. App. l. c. 41; Lyke v. Ins. Co., 187 S. W. 265; Serabian v. Metropolitan Life Ins. Co., 17 S. W. (2d) 646.]

In all of these cases, except the last one, the policy was held never to have gone in effect because there was no proof that any premium had been paid. In the Serabian case, supra, it was admitted by plaintiff that only the first quarterly payment had been made and the policy by its terms was held to have lapsed. But in the present case there is no such admission. The policy having gone into effect, it was for defendant to make good the defense of non-payment of subsequent quarterly premiums and, although that evidence was strong and convincing, it was nevertheless a question for the jury.

Plaintiff's Instruction No. 3 permitted plaintiff to recover a penalty and attorney fees for vexatious and unreasonable delay in payment of the loss due under the policy. There was no evidence on

which to base this instruction. There was abundant evidence tending to prove that the policy had lapsed and defendant was fully justified in contesting its liability under the policy. There is no evidence that defendant was lacking in good faith or that it refused payment wilfully or without reasonable cause. The question should not have been submitted to the jury. [Berryman v. Ins. Co., 204 S. W. 738; Shoe Co. v. Assurance Co., 210 S. W. 37.]

Plaintiff's Instruction No. 2 is complained of because it permitted plaintiff to recover without a finding that defendant had refused to pay. There can be no question but that defendant did refuse to pay and we think the omission not reversible error.

Error is alleged in the refusal of the trial court to permit defendant's witness Robert F. Carter to testify in explanation of certain entries on defendant's premium record card introduced in evidence. An examination of the record shows the witness answered the question and the objection came after he stated that he had made the entry showing the lapse of the policy, after learning from the company's records that the quarterly payment due January 28, 1930, had not been paid. The records referred to were the best evidence, and, in any event, the testimony went in and was never stricken out. We find no reversible error on this point.

Defendant contends plaintiff's attempt to show an erasure on its premium record card, was reversible error. There is no evidence as to what was erased although plaintiff's witness was questioned in regard thereto. The real test is whether or not the proof was made in good faith or for the mere purpose of prejudicing the jury. Since defendant was relying on this card to prove by its record the policy had lapsed we think plaintiff was justified in attempting to show that record may have been altered. Defendant had a right to explain the erasure, which it did not do. We find nothing to indicate plaintiff was lacking in good faith and therefore hold against defendant on this assignment.

Error is assigned in permitting plaintiff's counsel in his argument to the jury to state, "He asked for a quarterly payment premium, and they gave him an annual premium," to which defendant's counsel objected. In view of the record we find no reversible error in this circumstance. As the trial court said at the time, plaintiff's counsel was arguing his theory of the evidence which he had a right to do. It was for the jury to say whether the statement attributed to counsel was correct and we believe they were not prejudiced by the remark.

It follows the judgment should be affirmed on condition that plaintiff file a remittitur of $100 penalty and $200 attorney fees allowed him for vexatious refusal of defendant to pay the amount due, within ten days from the date of this judgment, otherwise, the cause should be reversed and remanded. It is so ordered. *Cox, P. J.,* and *Smith, J.,* concur.