Anna E. Gibson, Respondent, v. Texas Prudential Insurance Company, Appellant.—86 S. W. (2d) 400.

Springfield Court of Appeals.   October 7, 1935.

868

*Levy & Levy* and *Mann, Mann & Miller* for appellant.

*Fred W. Carden* and *Haymes & Dickey* for respondent.

SMITH, J.—This case comes to the writer on reassignment. The suit is based upon a life insurance policy issued by the defendant, upon the life of Harry E. Gibson, now deceased, who was the husband of the plaintiff.

There is no controversy here, over the pleadings. The petition is formal, alleging that the policy was issued for one thousand dollars, upon the life of Harry E. Gibson on the 19th day of February, 1932, and that on or about that date, in consideration of the sum of $3.71 "to it paid as the first quarter annual premium due thereon" the defendant executed and delivered to Harry E. Gibson the policy of insurance involved in this suit, in which the plaintiff was named beneficiary.

The petition alleged the payment of the first quarter annual premium of $3.71 and the delivery of the policy to Harry E. Gibson, and that he thereafter performed and fully complied with the terms of said policy, and that the plaintiff has performed all the obligations required of her by said policy.

The petition alleged that while said policy was in full force and effect the said Harry E. Gibson was killed in an automobile accident, on the 12th day of March, 1933; that plaintiff notified defendant of the death of Harry Edward Gibson and requested proper forms for the making of proof of death and presentation of her claim under said policy, but that the defendant failed and refused to furnish said proper forms and declared that said policy was not in force at the time of said death and that such failure and refusal and such declaration on the part of the defendant was on the 5th day of April, 1933. Plaintiff states that by reason of all the above, the defendant became liable to her under said policy in the sum of $1,000; that it has paid her nothing at all; that defendant has without just cause or excuse failed and refused and still fails and refuses to pay her the amount due under said policy; that defendant's failure to pay her the amount due under said policy is and was willful and vexatious and without any just or legitimate cause or excuse; that the plaintiff was compelled to and has employed an attorney to bring and prosecute this suit to collect the amount due her under said policy and has agreed to pay said attorney a reasonable fee for his service herein.

The petition closed with a prayer for judgment for $1,000, with interest thereon at the rate of six per cent per annum, from the 5th day of April, 1933, and for damages of $100 for vexatious fail-

ure and refusal to pay said policy and for a reasonable attorney's fee.

The answer, caption and signature omitted, is as follows:

"Comes now defendant and for its answer to plaintiff's petition herein:

"Admits that on or about the 19th day of February, 1932, it executed its policy of insurance No. 22158 in the sum of one thousand ($1,000) dollars, upon the life of Harry Edward Gibson, the same being the policy of insurance filed with and made a part of plaintiff's petition.

"Admits that said policy provided that it was issued in consideration of a quarterly premium of three and 71/100 ($3.71) dollars and that the first quarterly premium of three and 71/100 ($3.71) dollars, keeping said policy in force for a term of three months from the date thereof, was paid.

"Denies that the said Harry Edward Gibson fully performed and complied with the terms and conditions of said policy and that the said policy was in force at the time of the death of the said Harry Edward Gibson on the 12th day of March, 1933, or that there was any existing policy or contract of insurance executed by this defendant on the life of the said Harry Edward Gibson at the time of his death.

"Alleges that under the terms of the policy of insurance aforesaid and the application therefor it was, among other things, provided that:

" 'This insurance is granted in consideration of the payment of three and 71/100 ($3.71) dollars, the receipt of which is hereby acknowledged and the voluntary payment of a like sum in advance on or before the 19th day of each February, May, August and November during the continuance of this policy, and in consideration of the application for this policy, which is hereby made a part of this contract.'

"That it was further provided in said policy:

" 'All premiums are payable at the Company's Home Office in Galveston, Texas. The Company may designate a collector to receive them elsewhere on or before the due dates, but no person is authorized to receive any premium on behalf of the Company, except in exchange for regular receipt signed by its President, Vice-President or Secretary, and countersigned by the designated collector. No notice of a premium, and no acceptance of a premium after maturity or elsewhere than at its Home Office (and then only by one of the above-named officers), is to be deemed a precedent or a waiver of any provision of this Contract, no matter how often repeated.

" 'Except as herein otherwise provided, this Policy shall lapse in event of non-payment of any premium or installment thereof.'

"Alleges that the said Harry Edward Gibson paid the first quarterly premium of three and 71/100 ($3.71) dollars at the time of making application for said policy and before delivery thereof; that no premium, after the first quarterly premium, was ever paid by or on behalf of the said Harry Edward Gibson, on said policy; that the second quarterly premium was due and payable under the terms of said policy long prior to the death of the said Harry Edward Gibson and that upon the failure to pay said second quarterly premium and because of said failure, said policy lapsed, according to its terms aforesaid and was therefore not in force as a binding contract of insurance upon this defendant at the time of the death of the said Harry Edward Gibson.

"Denies each and every other allegation in plaintiff's petition contained and having fully answered, prays to be discharged with its costs."

The record shows no reply to the answer was filed, but the case was tried as if the reply was filed.

The case was first tried to a jury on October 27, 1933, at which time the jury was unable to agree upon a verdict, and the cause was continued to the next term of court. A trial was had at the March Term, 1934, and the jury returned a verdict for the plaintiff, in the sum of $1,054.67, and judgment was entered accordingly. Motion for new trial was filed and overruled, and the case was appealed to this court. After argument the case was passed upon by this court. A motion for rehearing was sustained and there was a reargument, and the case is again for consideration.

Several assignments of error are set out in the appellant's brief, but they really may be considered under two heads, viz.: that there is error in failing to sustain the demurrer to the evidence, and error in giving instructions and in refusing instructions.

There is not so very much controversy over the evidence. The W. Roger Primm Agency, Incorporated, was the general agent of the defendant in Springfield, Missouri, where this policy was applied for and delivered to the insured. H. D. (Bud) Crone was the soliciting agent under said general agent, and it was he that took the insured's application and delivered the policy to him shortly after it was executed by the defendant at Galveston, Texas, on February 19, 1932.

Defendant by its answer, admits the execution and delivery of the policy and the receipt at the time of delivery of the first quarterly premium of $3.71, but alleges that the second quarterly premium of $3.71 payable May 19, 1932, was not paid when due or within the grace period of one month, as provided by the policy.

The uncontroverted testimony shows that the first quarterly premium was $3.71, and out of this $2.97 was Crone's commission, and

that the net out of the quarterly premium was seventy-four cents, of which thirty-seven cents went to the Primm Agency and thirty-seven cents to the insurance company, and the company's interest went through the Primm Agency. The interest of the company in the first year's premium was four times thirty-seven cents or $1.48; that of the Primm Agency was the same. The interest of the soliciting agent in the first year's premium was $11.88, if the year's premium was paid.

The testimony most favorable to plaintiff is as follows:

On February 9, 1932, for considerable time prior thereto and down to the time of the trial the W. Rogers Primm Agencies, Inc., was the general agent of the Texas Prudential Insurance Company, defendant. The former's work was done through its agents; one was H. D. (Bud) Crone, who was employed from June, 1931, until the latter part of June, 1932.

On February 9, 1932, Harry Edward Gibson was working at The Hamburger Inn, in Springfield, which was owned by the Haas Brothers. He drew $15 per week. On that date Crone took from Gibson an application for a $1000 insurance policy in the Texas Prudential. The first quarterly premium was $3.71, but Crone did not collect the same from Gibson at that time. It was agreed between Crone and Gibson that Crone would trade it out. Crone then began eating at the Inn and taking merchandise which it was agreed should be credited against the premium.

Crone signed his name at the bottom of the application as agent and delivered the same to the Primm Agencies, which in turn signed and sent the same to the defendant company at Galveston, Texas. Crone did not turn in any money to the Primm Agencies with the application.

Meanwhile Crone ate at and received merchandise in accordance with said agreement. On February 16th the plaintiff, Mrs. Gibson, wife of Harry Edward Gibson, was at the Inn. Gibson then paid Crone in cash $4, and Crone delivered a receipt therefor, which is plaintiff's Exhibit B which is not signed and is worded as follows: "Recd. of Harry Gibson $4 on acct. Feb. 16, 1932." Crone did not turn this money to the company. The defendant company wrote out the policy in Texas and mailed the same to the Primm Agencies. It was dated February 19, 1932, and upon receipt by the Agencies was turned over to Crone for delivery to Gibson. Within a few days after February 19, Crone went to the Inn to deliver and did deliver the policy with the application attached. Mrs. Gibson was there also on that day. When the policy was handed to Gibson, her husband, she asked what it was, looked it over and learned for the first time that Gibson had taken out the policy. She remonstrated, saying that they could not afford such payments. Thereupon her husband

and Crone explained to her the agreement was that Crone would eat at the Inn and receive merchandise for the year's premiums, and pay them as they fell due.

Crone continued to eat at the Inn for considerable time. Plaintiff testified Crone ate there and took merchandise until the last of the days Gibson worked there. He quit working there May 17, 1932. Mrs. Gibson was in the Inn three, four or five times a week, and at times two or three times a day. Crone had a book and Gibson had a book, and upon Crone eating and/or receiving merchandise each would make an entry in his book. Plaintiff described the books. Around the last days of Gibson's employment at the Inn, Gibson and Crone totaled their books and Crone stated that he had eaten sixty-eight cents more than the year's premium. It was thereupon agreed that the sixty-eight cents would apply on the next year's premium. Gibson died March 12, 1933.

It was stoutly denied by the defendant through Crone, its witness, that $4 was paid in cash. The plaintiff does not contend that more than $4 was paid in cash at any time. The contention of the plaintiff is that the premium for the year was traded out at the Hamburger Inn, except the $4 claimed to have been paid in cash.

The testimony shows that Crone never did pay to the Primm Agency the seventy-four cents in cash, on the first or any other premium. The agency later deducted seventy-four cents for the first quarterly premium, from the money it owed Crone.

There is not a particle of testimony of any kind that the defendant company or the Primm Agency ever at any time, until after the death of the insured, had an knowledge of the agreement between the soliciting agent and the insured, that the premium was to be traded out. The soliciting agent said that he was the only one to trade out the first premium. There is no doubt but the first quarterly premium was paid. The defendant admitted that.

Conceding for the sake of the demurrer that there was testimony as to an agreement to trade out the first year's premium and that the soliciting agent so understood and took the merchandise, was that agreement between the agent and the insured enough to bind the defendant company? We are forced to the conclusion that it was not.

We have carefully read the able brief submitted by the respondent and the several cases cited therein; we have also read the many cases cited by the appellant, and have carefully tried to weigh all of the authorities in the light of our Missouri Statutes, and the facts in this case, and we think the question as narrowed down is simply whether the alleged agreement, if made between the insured and Crone, is binding upon the defendant.

In a suit upon a life insurance policy where the defense is that the policy lapsed for nonpayment of premiums, it may be conceded

for the purposes of the present case, that, ordinarily, the burden shifts to defendant to prove the nonpayment of such premiums. The basis for such a rule is that, the insured being dead, all the information with reference to the payment or nonpayment of premiums is in the sole possession of the insurance company, therefore, plaintiff is aided by a presumption that the policy continued in force through the payment of premiums by the insured until his death and that the defendant, being in possession of the facts, is in a position to overcome this presumption by evidence. This rule, however, has no application here, because plaintiff did not seek to avail herself of this presumption but undertook to prove, and by her instructions to require the jury to affirmatively find, as a prerequisite of her right to recover, that the deceased had paid all premiums necessary to keep this policy in force.

That such was her trial theory; that she brushed aside the presumption and assumed the burden is shown not only by her own evidence but by instruction No. 1, given at her request, which instruction we may consider in passing on the demurrer for the purpose of showing the theory of the case adopted and followed throughout by the plaintiff. She took the stand in her own behalf and although the issuance and delivery of the policy, the payment of the first premium and the death of the insured were admitted by defendant's answer, she assumed the burden not only of proving these facts but that the premiums were paid. By her instruction No. 1 she did not seek the aid of the presumption but, on the contrary, requested the court to instruct and it did instruct the jury that she must prove that the premiums were paid and she submitted her theory as to how the premiums were paid; namely, that Crone purchased of insured "meals and merchandise at Log Cabin Hamburger Inn in an amount equal to the balance necessary to pay in full the first year's premium," under an agreement between them that said meals and merchandise were "to be payment of the premium on the policy of insurance issued as above stated for the balance of the period of time of one year from and after the date of said policy."

The part of the instruction involved is as follows:

". . . and if your further find and believe from the evidence that on or prior to the date of delivery of said policy, the said Harry Edward Gibson entered into an agreement with the said H. D. Crone, by the terms of which agreement said Harry Gibson was to be given credit on the balance of the first year's premium on said insurance policy for meals and merchandise at the Log Cabin Hamburger Inn had and purchased by Crone; and if you further find and believe that on or prior to May 19, 1932, the said H. D. Crone had by reason of the credit so allowed him purchased meals and merchandise at said Log Cabin Hamburger Inn in an amount equal to the balance

necessary to pay in full the said first year's premium; and if you further find and believe from the evidence that by the terms of said agreement, if you find there was such an agreement, meals and merchandise so had and purchased by H. D. Crone, if you find they were so had and purchased, was to be payment of the premium on the policy of insurance issued as above stated for the balance of the period of time of one year from and after the date of said policy; and if you further find that on or about the 12th day of March, 1933, the said Harry Edward Gibson died; and if you further find that the defendant has not paid to this beneficiary the amount of said policy, then and in that event your verdict will be for the plaintiff, if you find and believe from the evidence that said H. D. Crone as such agent of the defendant had power and authority to collect premiums on said policy of insurance.

"If you find the issues in favor of the plaintiff under the foregoing and the other instructions, you will allow her the sum of $1000 and interest thereon at six per cent per annum from April 5, 1933."

In passing upon the question of whether a case was made for the jury, the question is: Has plaintiff proven that all premiums necessary to keep the policy in force to the date of the death of insured were timely paid and that the policy, therefore, had not lapsed?

Five quarterly premiums had become due upon the policy in suit prior to the insured's death but he died within the grace period following the due date of the last of these premiums, so plaintiff can recover only upon proof that four quarterly premiums of $3.71 had been paid when due or within the grace period, only the first of which the defendant admits was paid.

Plaintiff admits that no payment in cash was made other than a payment of $4 on February 16, 1932. That such a payment was made is denied not only by defendant but by Crone. Plaintiff's only evidence that such a payment was made is her testimony that she saw insured give Crone some money, $4, which he took from the cash drawer and which was the property of Henry and Emil Haas and the so-called receipt, Exhibit "B," the competency of which was earnestly contested by defendant. It is a significant fact that if cash and not merchandise, as Crone contends, was given in exchange for this receipt, it was given prior to the issuance and delivery of the policy, which was dated at Galveston, Texas, on the 19th of February and is in the teeth of plaintiff's evidence that the insured told her in the presence of Crone that the premium was to be paid in merchandise. Aside from this alleged $4 cash payment, plaintiff admits that no other money was paid at any time and that if the premiums were paid at any time and that if the premiums were paid at all, they were paid in food and other merchandise. She requested the jury, by her instruction No. 1, to so find.

The question, therefore, arises as to the authority of Crone to bind the defendant company by such an agreement as plaintiff contends was made between him and insured. It is not contended defendant had knowledge of such an agreement. Neither is it contended that Crone carried out his agreement with insured by paying to the company the premiums in money, the value of which he received in merchandise, so there is in this case no question of ratification by the principal of the act of its agent or of estoppel because of the payment by the agent to the company.

Life insurance premiums are payable in money. As stated by the Supreme Court of the United States in Hoffman v. J. Hancock M. L. I. Co., 92 U. S. 161, 23 L. Ed. 539, 541.

"Life insurance is a cash business. Its disbursements are all in money, and its receipts must be in the same medium. This is the universal usage and rule of all such companies."

The insured knew that, in his dealings with Crone, the latter was acting as an agent for defendant and that his debt was not one to Crone but to defendant and that Crone's authority was limited to that of collecting the amount due his principal.

The law is well settled that one dealing with a known agent is charged with the duty of ascertaining for himself the scope of the agent's authority.

In Johnson v. Hurley, 115 Mo. 513, it was held, 1. c. 519.

"It may be stated, in the first place, as a general rule, that an agent can only act within the circumscribed authority given him by his principal, and one who deals with him is put upon his guard by the very fact that he is dealing with an agent and he must ascertain for himself the nature and extent of his authority. The burden is, therefore, always cast upon one claiming the benefit of a contract made with another who assumes to act as the agent of a third person to establish by satisfactory evidence that the contract relied upon was within the scope of the agent's authority. Mechem on Agency, Secs. 276-289, and cases cited."

Crone was what is termed a soliciting agent. His authority was confined to the taking of applications for insurance, delivering policies and collecting premiums which were payable in money. All courts recognize a clear distinction between the authority of a soliciting agent and a general agent, holding that while the latter's authority is coextensive with that of its principal, the former's is limited and he cannot bind his principal by any act subsequent to the delivery of the policy and has no authority with reference to policies theretofore delivered, except to collect premiums.

32 C. J. 1065-1067 points out the distinction between the two types of agency. At 1. c. 1065, it is stated:

"b. GENERAL AGENTS—(1) WHO ARE. A general agent of an insurance company is generally one who is authorized to accept risks, agree upon and settle the terms of the insurance contracts, issue policies by filling out blank instruments which are furnished him for that purpose, and to renew policies already issued, as distinguished from a soliciting agent who merely procures applications, forwards them to some other officer by whom the policies are issued, collects the premiums and delivers the policies."

And at l. c. 1067:

"d. SOLICITING AGENTS. A soliciting agent is merely a special agent, and, as a general rule, has authority only to solicit insurance, submit applications therefor to the company, and perform such acts as are incident to that power. He may bind the company by agreements and representations properly made in connection with the application for insurance, but ordinarily has no authority to bind it by attempted acts or contracts in its behalf, relating not to the taking of the application, but to the subsequent contract of insurance, or to other matters not connected with the application and not within the real or apparent scope of his authority, such as the appointment of other agents."

In Clark v. J. Hancock M. L. I. Co., 58 S. W. (2d) 484, l. c. 486, it was held:

"And though in Missouri an agent merely authorized to solicit insurance, deliver policies, and collect premiums may waive conditions precedent, on the theory that such an agency carries with it implied authority to do everything necessary to discharge the business in hand (citing cases) yet such agent cannot, after the execution of a policy, waive any of its conditions, for all of his functions as agent are held to have then ceased except to receive premiums. 'An insurance agent who is only authorized to collect and forward premiums does not have power to waive conditions in a policy or forfeitures arising out of a breach thereof.' [Cooley's Briefs on Insurance, Vol. 5, p. 3986.]"

The rules of law applicable to the facts in this case must not be confused with the rule announced in some decisions that a soliciting agent empowered to collect premiums can bind the insurance company by an extension of time within which to pay the premiums. That question is not involved in this case. It is not claimed that the insured requested or that Crone agreed to give him additional time within which to pay but, on the contrary, it is contended that he did pay and prior to the time the payment was due by the delivery of food and other merchandise to Crone.

The distinction between the act of the agent in extending time of payment of premiums and waiving the payment in money is well pointed out in Tomseck v. Travellers' Ins. Co., 113 Wis. 114, 88 N.

W. 1013. In that case the insured agreed with the agent of the insurance company to take out a policy of life insurance and to pay the first premium by giving the agent credit on account at the insured's meat market. In holding that the agreement was not within the actual or apparent scope of the agent's authority the court referred to the cases holding that the agent might waive or extend time for the payment of premiums, and in holding that such cases were not in point said:

"'There was no waiver of the payment in money, only a waiver of the time of payment. . . .

"None of them go to the extent of holding that the agent may waive such payment and take something in lieu thereof, which does not amount to payment to the corporation in cash, such an agreement on the part of the agent to take pay for a premium in meat, no credit being given or payment actually made to the agent, or credit being given by him to the corporation in the usual course of business."

The court further held:

"It would seem that nothing further need be said to show that the policy in question never became binding upon appellant. The jury found that the agent agreed to accept his own indebtedness for meat as part payment for the first premium and to take meat for the balance thereof. It is undisputed that such agreement was never carried out by the insured so as to obligate the agent to pay the company. Neither the company nor the agent received pay for the first premium. There is no analogy between this case and one where the agent merely agrees to give the applicant for insurance time to make the first payment, or agrees that he will advance the amount of the first payment himself, and actually does advance it, or agrees to charge himself with the first premium in his account with the company, according to custom of doing business between himself and his principal, thereby become liable to the company. We must hold here that the agent had no implied authority to use the appellant's policy of insurance to pay his meat bills or to build up a credit for future purchases of meat. There are no circumstances disclosed in the evidence to avoid the effect of that conclusion."

The rule seems to be universal that an agent, with power to collect money owing to his principal, cannot bind the principal by accepting merchandise or other personal property in lieu of money. The only exception which we think will be found to this universal rule is that if the agent accepts merchandise in lieu of money and then pays the money to his principal, the principal is in no position to complain, but the facts do not bring this case within that exception.

In 2 C. J. page 627, the rule is stated:

"(266) (c) MEDIUM OF PAYMENT—aa. IN GENERAL. In the absence of express authority or an established custom or usage

otherwise, an agent with a bare power to collect cannot bind his principal by any arrangement short of an actual collection and receipt of the money. He cannot receive a payment subject to a condition, or agree to offset the amount due against a debt due by his principal. Furthermore, there is in the agent no implied power to receive in payment anything except lawful money, and unless the third person can establish an express authority to accept something other than money, or conduct of the principal from which such authority may fairly be implied, the principal will be bound by payment to his agent only so far as the payment is in cash.''

In West Publishing Co. v. Corbett, 165 Mo. App. 7, 1. c. 11, 145 S. W. 868, it was held:

''An agent for the collection of an account, such as the proof shows plaintiff's attorney was, cannot, without explicit authority, receive anything but money in liquidation of the debt, or bind his principal by any agreement short of an actual collection and receipt of the money; if he receive anything else, such as the note of the debtor, in payment the debtor is not discharged, unless the action of the agent is ratified by his principal. [Tiedeman on Commercial Paper, sec. 375; Mechem on Agency, sec. 375; 22 Am. & Eng. Ency. Law (2 Ed.), p. 522.] The burden of proving such authority or ratification was upon the defendant, he being the one asserting it. The evidence here disclosed that the attorney or agent had the account in hand merely for collection and, therefore, as we have seen, he had no implied authority to receive defendant's note in payment.''

The rule has been so rigidly enforced in this State that it has been held that an attorney authorized by his client to collect a debt cannot bind the client by accepting as payment property other than money.

In Ladd v. McColl, 209 S. W. 578, it was held, 1. c. 579:

''It is well-recognized law that an attorney who obtains a judgment for a client has no authority to compromise it by accepting land in settlement. [Davis v. Hall, 90 Mo. 659, 3 S. W. 382; Willard v. Seigle Co., 47 Mo. App. 1.] So in no view of the case is defendant entitled to a reversal.''

That this rule applies with all its force to an insurance agent is stated in 14 R. C. L., p. 965.

''Notwithstanding some authority to the contrary, the general rule would seem to be that an insurance agent who has no apparent authority to accept the cancellation of his own indebtedness in satisfaction of the premium on a policy, and where any person dealt with has knowledge of the agency, he cannot avail himself of payment made in that way.'' [21 R. C. L., p. 869.]

''A power to collect implies only an authority to demand and receive the thing due on an obligation, and not an authority to commute

for any other thing. It is established by all of the authorities that the power of a collecting agent by the general law is limited to receiving for the debt of his principal, that which the law declares to be legal tender or which is by common consent considered and treated as money, and passes as such at par.''

In Couch, Encyclopedia of Insurance Law, vol. 2, page 1648, the rule is announced:

''On the other hand, an insurance agent ordinarily has no authority to accept anything other than money or an instrument calling for the payment of money for a premium, such as personal property, or professional services, or even to cancel his own indebtedness to the insured, or accept credit for merchandise on his account.''

In the late case of Turner v. Supreme Lodge, K. P. (Okla.), 27 Pac. (2d) 612, the defense in a suit on a life policy was that the policy had lapsed for the nonpayment of premiums. Plaintiff's evidence was that the insured, one Grossman, had sold and delivered to Thomas DeWalt, insured's soliciting agent, a bull at the agreed price of $35 and that this indebtedness should be liquidated by the said DeWalt paying to the said insurance company the premiums which might thereafter become due and that had he done so, the policy would not have been in default. The court, after quoting from numerous authorities, says, l. c. 615:

''A careful review of many cases indicates that the great weight of authority announces the rule that an agreement between the insurance agent and the insured whereby the former accepts personal property in satisfaction of the premium due on the policy does not bind the company in the absence of an express authorization to accept such personal property in lieu of money for the premium and that no valid contract arises by such payment in the absence of consent, acquiescence, estoppel, or ratification by the company.'' [Citing cases.]

In Hoffman v. J. Hancock, M. L. I. Co., 92 U. S. 161, 23 L. Ed. 539, the agent took from the applicant for insurance a horse valued at $400, in part payment of the first premium. In holding that the premium was not thereby paid and in denying recovery on the policy, the court held:

''If the agent had authority to take the horse in question, he could have taken other horses from Hoffman, and could have taken them in all cases. This would have carried with it the right to establish a stable, employ hands and do everything else necessary to take care of the horses until they could be sold. The company might thus have found itself carrying on a business alien to its charter, and in which it had never thought of embarking.

''The exercise of such a power by the agent was liable to two objections: It was *ultra vires,* and it was a fraud as respects the com-

pany. Hoffman must have known that neither Goodwin nor Thayer had any authority to enter into such an arrangement, and he was a party to the fraud. No valid contract as to the company could arise from such a transaction. This objection is fatal to the appellant's case.''

In Flanagan v. Travellers' I. Co., 229 N. Y. Supp. 641, l. c. 643, it was held that an agreement between the insured and the soliciting agent, whereby the premium was to be paid by the insured in labor and personal services for the agent was not binding upon the company.

In Turlington v. Metropolitan L. I. Co. (N. C.), 137 S. E. 422, l. c. 423, the agent agreed to accept part of the first premium in the form of a credit on account of professional services rendered by applicant's son, a doctor. In holding that the credit given the agent was not binding upon the defendant company, the court said, l. c. 423:

''An agent cannot accept a credit on his personal indebtedness as payment on a sum due or to be due to his principal by his creditor, and thereby bind his principal, unless the principal has expressly authorized the agent to do so. All persons dealing with an agent do so with notice of his salutary principle of the law of principal and agent, which is too well established to require citation of authorities.''

The rigidity with which this principle of law has been applied in insurance cases is illustrated in Thompson v. Equitable L. A. Society, 199 N. C. 59, 154 S. E. 21, 85 L. R. A. 739, in which the agent took an application for a retirement annuity policy, the first premium of which was $105 as stated in the application. The agent, however, advised the insured that this being an annuity, the more money that was paid in at the time, the greater would be the annuity. Upon this representation, the insured, at the time of the application paid the agent $121 in cash and four $100 Liberty bonds. The company refused to issue the policy and tendered back to the applicant the $105 the amount shown by the application to have been paid in cash, the company having no knowledge that more than that amount was paid to the agent. This the applicant refused to accept and brought suit for $521. In holding that the plaintiff was entitled to recover only the sum of $105, the court holds, l. c. 744:

''We have not overlooked the fact in this case that plaintiff made the payment to defendant's agent partly in money and partly in Liberty bonds. It is well settled that an agent for an insurance company, authorized to receive money in its behalf in payment of premiums, has no authority to receive anything except money, and that the company is not bound by a payment made otherwise than in money. This principle has no application in the instant case, however, as the judgment is that plaintiff recover of defendant a

sum less than the money received by the agent. Plaintiff was denied recovery of any sum on account of the Liberty bonds.''

. Since Crone had no authority to accept any part of the premium in merchandise and since plaintiff makes no contention that the premiums necessary to keep the policy in force until the date of the insured's death were otherwise paid, she is in no position to assert that the policy continued in force.

In Greenwood et al. v. Burns, 50 Mo. 52, the court held, l. c. 54:

''If the plaintiffs did no more than invest Oldham with authority as simply a collecting agent, it is very clear that Oldham's action in receiving credit for the entire amount, including their bill, would not bind them; for an agent for collection has no authority to receive the payment for his principal in discharge of his own debt, and the agent's creditors could not set up such payment in satisfaction of the demand.''

There was no evidence in this case showing or even tending to show that Crone had any authority to bind the company by the agreement alleged to have been made with insured. In fact, the only evidence on the question was to the effect that he had no such authority. The burden of showing that he did have such authority rested upon plaintiff.

The undisputed facts in this case are that the agent had the right to deduct his commission *only from the first premium* or from the $3.71 due upon the delivery of the policy. Crone, while charged with the duty of collecting the first premium, had no authority to collect the second quarterly or any subsequent premium, even in money, unless he was specifically instructed to do so in the event the premium had not been paid five days before the expiration of the grace period. All premiums subsequent to the first were collected by the general agency by sending the usual premium notices to the insured. The first of these notices was sent out by the home office some thirty days before the premium was due. If, within five days after it was due, it had not been paid, a second notice was sent out by the general agency and if, at the expiration of twenty-five days after the due date or within five days before the expiration of the grace period, the premium had not been paid, the general agency sent to the insured the third premium notice and then, for the first time, the soliciting agent is notified that the premium had not been paid. He is then sent a copy of the third notice, which is his instruction to see the insured and urge him to keep his policy in force by the payment of the premium. If the premium is paid before the time arrives for the sending out of the third notice, the soliciting agent has nothing to do with its collection. If it is not paid and he collects it after he receives a copy of the third notice, then he is not authorized to deduct his commission and account to the general

agency for the net amount due the company but remits to the general agency the full amount and thereupon the general agency either mails to the insured or gives to the soliciting agent for delivery to the insured the official premium receipt. Neither the full amount nor the company's net of the second or any subsequent premiums is charged to the account of the agent by the general agency, as is done in the case of the first premium. While the soliciting agent may deduct his commission from the amount of the first premium collected, he must look to the insurance company for his commissions on the second and all subsequent premiums.

We have extended this opinion at too great length. We are convinced that the demurrer to the evidence offered at the close of the whole case, should have been sustained, and that it was reversible error on the part of the trial court not to sustain the same. In reaching this conclusion we have not been unmindful of holdings of the courts of this State on somewhat similar cases, among which are Smith v. Ohio Millers Mutual F. Ins. Co. (Mo.), 49 S. W. (2d) 42, 45, and cases there cited; Waters v. Bankers Life Ass'n, 50 S. W. (2d) 183; Girvin v. Metropolitan L. Ins. Co., 84 S. W. (2d) 644, 645, and cases cited; and Medling v. Abraham Lincoln Life Ins. Co., 41 S. W. (2d) 6. The last three cases were by this court.

The above cases were tried on the theory that the burden was on the defendant to show nonpayment of premiums. Not so in the instant case. The plaintiff assumed the burden throughout, and the case must be considered here on the same theory assumed in the trial court, and plaintiff's own evidence showed a failure of payment.

Since we have reached the conclusion that the demurrer should have been sustained it is not necessary to pass on the other assignments of error.

For the reasons herein stated, the judgment should be reversed. It is so ordered. *Allen, P. J.,* and *Bailey, J.,* concur.