W. A. SMITH, RESPONDENT, v. MUTUAL BENEFIT HEALTH AND AC-CIDENT ASSOCIATION, APPELLANT.—104 S. W. (2d) 752.

Kansas City Court of Appeals. May 3, 1937.

*Orin J. Adams* for respondent.

*John J. Robison* for appellant.

BLAND, J.—This is an action on a policy of h alth insurance. There was a verdict and judgment in favor of plaiitiff in the sum of $583.33. Defendant has appealed.

The facts show that plaintiff operated a lumber yard at Cowgill, dealing in lumber and building materials, keeping his own books; that he carried a policy of accident and health insurance with the defendant, which provided, among other things: (1) That defendant would pay insured $100 per month for disability resulting from disease, if such disease confined insured continuously within doors and required regular visits therein by a legally qualified physician, provided said disease necessitated total disability and total loss of time. (2) That the company would pay at the rate of $50 per month, but not exceeding one month, for disability, resulting from disease if such disease did not confine insured continuously within doors, but required medical attention, provided said disease necessitated total disability and total loss of time. The policy also provided for written notice to defendant of the sickness within 10 days after the commencement of the disability from such sickness. However, it provided that failure to give notice within the time provided should not invalidate any claim if it should be shown not to have been reasonably possible to give such notice and that such notice was given as soon as was reasonably possible. The policy further provided that proofs of loss must be furnished the company at its office in Omaha, Nebraska, in case of loss of time from disability, within 90 days after the termination of the period for which the association was liable. The policy also provided:

"Strict compliance on the part of the insured and the beneficiary with all the provisions and agreements of this policy, and the application signed by the Insured, is a condition precedent to recovery, and any failure in this respect shall forfeit to the Association all right to any indemnity."

The facts further show that plaintiff became ill on or about September 18, 1931, with typhoid fever; that from September 20, 1931, to March 1, 1932, he was continuously confined because of illness and that he otherwise came within the purview of the $100 per month provision of the policy.

The evidence further shows that for the month beginning with March 1, 1932, plaintiff's disability was such as to come within the provisions of the $50 per month provision of the policy.

There was a further showing that, during the month of March, 1932, plaintiff was not confined to his house but was "able to get up but might have to go back to bed and then get up again;" that after March 1, he was "weak and I didn't have much use of my hands and feet and couldn't walk much. I did not do anything

toward looking after my business until July, 1932. It was the latter part of May before I was able to walk up town, and I never transacted any business, that is work, until in May.'' Plaintiff further testified: ''After March 1, I was able to get out, go up town and take rides, but did nothing about transacting the business until July, 1932.''

The first communication that plaintiff had with the company was a letter that he wrote it concerning his claim on April 17, 1932. He was at home when he wrote the letter and testified that he was unable to transact any of his lumber business at that time. However, in his proof of loss he stated that he was first able to do any work on March 1, 1932. Plaintiff's physician testified that plaintiff was unable to perform any labor, that is, handle lumber or heavy materials, until the late summer of 1932; that his hands and feet were swollen and that this condition continued until the late summer; that ''He was able to be up and outside after March 1st, but was unable to perform book work or work of any kind to any great extent;'' that from March 1st until July 1st, he was unable to do any manual labor but might have been able to work some but not carry on his business. The witness would not say that he was totally disabled. ''He could give directions and supervision as to the operation of his business. He could not have been at his business all of the time.'' In the opinion of the witness, the plaintiff was unable to work until June 1, 1932.

The defense made to the claim was that plaintiff did not give timely notice of his disability and did not furnish proof of loss within the time required by the policy and, defendant now insists that its instruction in the nature of a demurrer to the evidence should have been given because of plaintiff's violation of the terms of the policy relative to these matters.

The evidence taken in its most favorable light to the plaintiff, shows that the provisions of the policy in reference to notice was not violated. Defendant, in a letter to plaintiff, dated August 2, 1932, admitted that it had received the notice on November 12, 1931. While, this was not within 10 days after the commencement of plaintiff's disability, the evidence shows that it was not reasonably possible for plaintiff to have given such a notice within that time and that the notice was given as soon as was reasonably possible.

However, the evidence shows that the provisions of the policy requiring that proof of loss be furnished within 90 days after April 1, 1932, the termination of the period for which defendant was liable, was not complied with, for the reason that the proof of loss was not received by defendant until July 23, 1932.

Plaintiff sought to show a waiver of the timely furnishing of the proof of loss by evidence tending to show that an an agent of the defendant, located at Cowgill, one Thompson, stated to plaintiff

that he might withhold the proof of loss until he had fully recovered and went back to work.

Defendant insists that said agent had no authority to waive the matter of timely proof of loss. The evidence in connection with the authority of Thompson shows that he was appointed by the company as a local collector or treasurer of defendant at Cowgill; that his duties were to collect and remit premiums to the company at its office in Omaha, Nebraska, from the locality of Cowgill where Thompson resided. This is all of the express authority Thompson had from the company. He had no authority and did not solicit or make contracts of insurance, countersign or deliver policies. There is no evidence that he ever received any blank proofs of loss from the defendant or forwarded any executed proofs of loss to the defendant, or ever assisted any policyholder in making one out. However, there is evidence that he did some things for the company other than collecting premiums. At one time the company wrote Thompson inquiring as to the condition of health of one Reidy, a policyholder. On May 3, 1932, Thompson wrote the company that Reidy had moved away the year previously and that he did not know Reidy's present address or of his being disabled. This is everything that Thompson did with reference to Reidy so far as the record shows.

As to plaintiff's claim the evidence shows that shortly after plaintiff was confined to his bed he asked his wife to procure blank proofs of loss from Thompson; that six to ten days after the beginning of plaintiff's confinement she asked Thompson for them. Thompson wrote to the company at Omaha requesting that blanks either be sent to him or to the plaintiff. The company sent the blanks to plaintiff. Thompson procured these blanks from plaintiff's lumber yard in plaintiff's absence. These blanks were apparently lost. It appears that Thompson was again asked to procure blanks so he wrote the defendant on April 30, as follows:

"William A. Smith, 126373 is entitled to sick benefits and desires blanks for proof of claim. Please send blanks to me or if you prefer send direct to him."

Defendant communicated with its district manager, one Shockey, located in Chillicothe, and Shockey sent the blank proof of loss direct to the plaintiff. Thompson was never notified that the blanks had been mailed to plaintiff.

During the time that plaintiff was sick defendant wrote Thompson inquiring about plaintiff's "condition about his sickness and things like that." Thompson collected premiums from plaintiff but he was instructed by the defendant, after plaintiff's illness had extended over a period of several months, to "not collect off of him any more" and authorized him "not to receive any more premiums from Mr. Smith."

Plaintiff testified that shortly after receiving the blanks (the second time) he talked with Mr. Thompson "about fixing out the blanks and he said, 'You had better not fix out the blanks until you get fully recovered.' Q. And what was your condition at that time? A. Well, I wasn't able to get around at all." Plaintiff further testified that when he finally made out the proofs he mailed them to Shockey. It was the custom of the defendant when an application was made for blank proofs of loss to send the blanks to its district agent where it had one. In this instance, as before stated, the defendant sent the proofs to Shockey, its district manager, who mailed them directly to plaintiff.

Unless Thompson was such an agent as to have authority to waive timely furnishing of proofs of loss, this suit cannot be maintained, as they were not furnished in time. [Hanna v. The Am. Cent. Ins. Co., 36 Mo. App. 538, 543; Leigh v. Springfield Fire & Marine Ins. Co., 37 Mo. App. 542, 546; U. S. F. & G. Co. v. W. P. Carmichael Co., 190 S. W. 648.]

Thompson was merely a collector. He had no authority to make contracts of insurance, issue policies, countersign, or deliver them. It is true that he attended to some other business for the defendant in the vicinity of Cowgill. He was asked to investigate the matter of the health of one Reidy and the defendant was in communication with him in reference to the condition of the health of insured. However, defendant did not intrust any of its blank proofs of loss to Thompson. On the two occasions when such blanks were requested it caused them to be sent directly to plaintiff. There is no evidence that Thompson ever handled any blank proofs of loss for the defendant, or, in fact, that he ever assisted any policyholder in making one out. There is no evidence that he had any authority to adjust losses.

It is well settled that an agent's authority, as to those dealing with him, is determined by the nature of the business intrusted to him. [32 C. J., p. 1062.] The character of business intrusted to Thompson did not authorize him to waive the provisions of the policy in reference to the proofs of loss. [14 R. C. L., p. 1160; Nickell v. Phoenix Ins. Co., 144 Mo. 420; 7 Coolidge Briefs on Ins. (2 Ed.), pp. 5967, 5968; Hausen v. Ins. Co., 66 Mo. App. 29, 30, 31; Mayberry v. Home Ins. Co., 208 S. W. 99, 101; Clark v. John Hancock Ins. Mut. Life Ins. Co., 58 S. W. (2d) 484, 486; Gibson v. Texas Prud. Ins. Co., 86 S. W. (2d) 400, 406.]

Plaintiff relies upon the provision of the policy providing that, in case it was not reasonably possible to give notice of the sickness within the time provided for in the policy, it could be given within such time as was reasonably possible and, plaintiff says, that in view of his sickness he gave timely notice and the time provision of the policy for furnishing proof of loss was not violated. However,

the notice provision of the policy has reference to the giving of notice of the sickness and not the filing of the proof of loss. In addition to this plaintiff, while not able to do any heavy work, within the ninety day period provided for the furnishing of the proof of loss, he was able, within that time, to do other things indicating that he was well enough to have furnished the proof of loss within that time. His excuse for not doing so was because he was assured by Thompson that he could wait. This claim is somewhat inconsistent with his theory that he did not make the proof within ninety days from April 1st because he was unable on account of sickness to do so. However, we think that the evidence shows beyond question that he was able to furnish the proof within the ninety day period. The judgment is reversed. All concur.